THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HERBERT STOUT, Defendant-Appellant.

Second District   No. 81—200

Opinion filed December 7, 1982.

G. Joseph Weller and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.

Theodore Floro, State's Attorney, of Woodstock (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:
Herbert Stout was charged on a 13-count information in McHenry County with the offenses of burglary, theft, attempt and forgery. This appeal arises from his jury trial on one count each of burglary and theft (Ill. Rev. Stat. 1979, ch. 38, par. 19—1(a) and par. 16—1(a)(1)), and four counts of forgery (Ill. Rev. Stat. 1981, ch. 38, par. 17—3(a)(1)).

He was acquitted of the forgery counts and the burglary charge.

He was convicted and sentenced to two years in the Department of Corrections for theft over $150, the sentence to be served consecutively to a three-year term imposed three months earlier for his conviction of two other counts of forgery which were contained in the information.

The defendant raises four issues here: (1) whether the trial court erred by limiting his cross-examination of a State witness in order to reveal the witness' bias, interest or motive for testifying; (2) whether the trial court erred in denying his tendered accomplice instruction; (3) whether the trial court erred in admitting into evidence two search warrants with supporting affidavits; and (4) whether the imposition of a consecutive sentence was improper.

Stout and the State's key witness at trial, Ronnie Starks, were taken into custody after the police apprehended DeWayne Nickolas, who had attempted to cash a check drawn on the account of the Century Wheels Research Corporation, at the Fox Lake Currency Exchange. The office manager there had previously been alerted that checks drawn on the Century Wheels account were stolen from its parent company, the Precision Switching Company in Spring Grove, Illinois.

Stout was implicated in the offenses charged on the basis of information provided to the police by Ronnie Starks. In two affidavits given to support the issuance of search warrants for a house and automobile belonging to Raymond Shaughnessy, Starks admitted his participation in cashing certain checks he alleged were forged by Stout, checks Stout and Shaughnessy allegedly had told Starks were stolen.

At trial, Starks testified that on May 28, 1980, Stout told him that he, DeWayne Nickolas, Dick Polinski, and Raymond Shaughnessy had burglarized the Precision Switching Company at about 7 or 7:30 p.m. the night before (May 27). Starks testified that on May 28, Stout drew two Century Wheels Research Corporation checks payable to the order of Nickolas and Starks using the checkwriter stolen from Precision Switching. Starks testified that because he cannot read or write, Stout endorsed the check made out to Starks' name; the checks were later cashed at the Fox Lake Currency Exchange, and Starks, Nickolas and Stout split the proceeds.

The same procedure was repeated the next day, the 29th, except that the first attempt of the men to cash the checks at a currency exchange in Schaumburg was unsuccessful, so they returned to the Fox Lake Currency Exchange where the checks were successfully cashed. Also on the 29th, after the checks were drawn up by Stout, some of the stolen office equipment was removed from Shaughnessy's house

and placed in a red Vega which was parked in Shaughnessy's front yard.

Stout presented an alibi defense, testifying that on the night of the burglary, he was at the Cozy Cottage, a tavern in Volo, Illinois, from approximately 6 p.m. until 1:30 a.m., with Ray Shaughnessy and Dick Polinski. The testimony of Shaughnessy, Polinski, and the bartender at the Cozy Cottage, Joe Verga, substantially corroborated that of Stout. Stout related that he and his girl friend lived next door to Starks and Starks' girl friend. At trial, it was revealed that Starks' girl friend was DeWayne Nickolas' sister, and a former employee of Precision Switching. Stout testified he was approached by Starks in the early morning of May 28, with the request that Starks be allowed to "leave some stuff" in Stout's girl friend's garage. She refused to allow this, and Stout suggested that Starks put the "stuff" in Shaughnessy's attic storage area, which they did together. Shaughnessy, although at home asleep during the time Starks and Stout moved the "stuff" in, was unaware that this had transpired until Stout mentioned it to him later that morning. Shaughnessy then demanded the items be removed from his house, because he believed the items were stolen. The items were later placed in the red Vega. Stout denied burglarizing Precision Switching, denied any knowledge of, or forging of, any of the checks admitted at the trial, and denied any involvement in the theft of the property identified at trial.

Prior to trial, the State moved *in limine* that the defendant be prohibited from cross-examining witness Ronnie Starks regarding charges that were pending against him in Lake County (*i.e.*, burglary and theft from a coin-operated machine). The defendant argued he should be permitted to cross-examine Starks as to the charges pending in Lake County for the purpose of exposing any bias, interest, or motive Starks might have to testify falsely against Stout. Defense counsel noted that the pending charges in Lake County occurred *after* Starks had been placed on two-year probation for burglary in McHenry County (where the defendant's trial was taking place) on July 31, 1980. Starks was also on probation in Lake County for a misdemeanor charge of exerting unauthorized control over property. Consequently, counsel argued, Starks could be testifying under the belief, reasonable or otherwise, that if he cooperated with the State against Stout, his probation in McHenry County would not be revoked in view of the pending Lake County charges.

The trial court granted the State's motion *in limine* as to the charge pending against Starks in Lake County, but reserved for an offer of proof during the trial whether the McHenry County State's At-

torney had made any promises to him. Following such an offer made in chambers, at which Starks was questioned by defense counsel, the trial court denied defense counsel's motion to allow him to question Starks in front of the jury. It was the trial court's finding that there was nothing in the offer of proof that indicated any promise of reward was made to Starks in return for his testimony.

We note that the record shows that Starks was questioned before the jury concerning his conviction in 1975 of a burglary/grand larceny charge in Florida, and his 1980 conviction for burglary in McHenry County following a negotiated guilty plea for which conviction he received a two-year sentence of probation. Part of that plea agreement was that Starks agreed to cooperate with the State's Attorney's office and the sheriff's department in the prosecution of Herbert Stout one time, at one trial. Before his trial in the instant cause, Stout had been convicted of two of the other forgery counts contained in the information, at which trial Starks testified in accordance with his plea agreement. The trial court, however, struck and directed the jury to disregard, a question posed to Starks by the assistant State's Attorney concerning "other matters" pending against Stout in which Starks was also involved. The jury heard Starks testify that prior to the negotiated plea, he had assisted the State and the sheriff's office in getting the search warrants for Shaughnessy's house and car, and that he had provided those authorities with the information necessary to secure those warrants. In later questioning by defense counsel, Starks stated that pursuant to his part of the plea agreement he had testified against the defendant at the "first trial."

The State urges this court to reject Stout's assertion of error first, because the jury apparently rejected Starks' testimony since it found Stout guilty only of theft over $150 which conviction was otherwise supported by the testimony of a defense witness, Raymond Shaughnessy; and second, the error was harmless because the offer of proof revealed Starks had no expectations of leniency.

In support of its arguments, the State cites *People v. Wilkerson* (1981), 87 Ill. 2d 151, 157, *People v. Eddington* (1979), 77 Ill. 2d 41, 44-45, *cert. denied* (1980), 445 U.S. 944, 63 L. Ed. 2d 777, 100 S. Ct. 1340, and *People v. Martin* (1978), 59 Ill. App. 3d 785.

In our opinion, the State's reliance on these cases is misplaced. This court has recently considered this same issue in two cases and has found the error was not harmless beyond a reasonable doubt and reversed and remanded each for a new trial. *People v. Foley* (1982), 109 Ill. App. 3d 1010; *People v. Freeman* (1981), 100 Ill. App. 3d 478, 481-83.

In *Eddington*, the court in chambers questioned both the witness and the prosecutor, and concluded no leniency was offered or expected. Here, only the witness was questioned, and his testimony did not clearly negate the possibility that he expected that his cooperation in testifying against Stout would, at the least, militate against the institution of probation revocation proceedings in McHenry County. Additionally, in *Eddington*, the prosecutor had very little influence over the disposition of the unrelated drug charges which were pending against the witness because they were in another county. Here, although the pending charge was in another county, Lake County, the offense occurred after the witness was placed on probation in McHenry County and, therefore, was a violation of one of the conditions of the witness' probation; *i.e.*, that he not violate any laws. Thus, the McHenry County State's Attorney had sole prosecutorial discretion to either maintain the witness' probationary status or file a petition to revoke the witness' probation. Finally, the court in *Eddington* also considered the fact that the witness would be testifying to, and had, in fact, given a statement and previously testified to, the facts surrounding the incident which had occurred two years earlier. It therefore concluded that it was not reasonable to believe that the testimony of the witness would be influenced by any interest or bias in connection with the cannabis charge. *People v. Eddington* (1979), 77 Ill. 2d 41, 44-45, *cert. denied* (1980), 445 U.S. 944, 63 L. Ed. 2d 777, 100 S. Ct. 1340.

In *Martin*, the court found no error occurred when the court, after an in-chambers examination of the witness, refused to permit cross-examination to discover potential bias due to pending battery charges unrelated to the trial of the defendant for arson. However, counsel's attempt to show bias in that case would have been merely cumulative and, thus, harmless error (*People v. Wilkerson* (1981), 87 Ill. 2d 151, 157), because the witness had already testified before the jury that he had also been charged with arson, and that his plea agreement with the State in return for his testimony was for a reduction of the charge to criminal damage to property over $150, and a two-year probation sentence. Consequently, the jury was apprised of the witness' potential bias, interest, and/or motive for testifying. *People v. Martin* (1978), 59 Ill. App. 3d 785.

In the case at bar, the jury knew the witness had struck a deal with the State to testify *once* against the defendant, and that he had done so at the defendant's *first* trial. The trial court's disallowance of any cross-examination regarding the charges pending against the witness in Lake County thus left the jury with the impression that he

had nothing to gain by his testimony against Stout and, as pointed out by the defendant, the court's error was compounded by the jury's erroneous impression and reinforced by the prosecutor's comments during closing argument.

■ In sum, the error may not be dismissed as harmless. Starks was the State's key witness and his credibility, or lack of it, was crucial to the case. Stout was improperly denied the right to fully confront this key witness before the jury, the ultimate trier of fact and assessor of credibility. As noted above, the evidence of the pending charges would not have been merely cumulative. Further, contrary to the State's assertion, Shaughnessy's testimony does not support the defendant's conviction for theft. Shaughnessy testified that he, meaning himself, thought the "stuff" was stolen. Absent Starks' specific testimony and the exhibits flowing from Starks (the warrants and supporting affidavits), there is no evidence in the record which even approaches the quantum which might be termed "overwhelming" evidence, as a result of which the error might be determined to be harmless. (*People v. Wilkerson* (1981), 87 Ill. 2d 151, 157.) The defendant's alibi defense at trial was substantially corroborated by three other witnesses, one of whom was not implicated in any way in the offenses charged: the Cozy Cottage bartender, Joe Verga.

We believe the cases cited require the cause be reversed and remanded for a new trial. In view of the disposition of this issue, it is not necessary to address the issue of whether the trial court erred in refusing Stout's tendered "accomplice" instruction.

Because this cause will be retried, we will address the third issue raised by Stout, that is, whether the trial court erred in admitting the search warrants and supporting affidavits.

Stout argues that the trial court erred in admitting into evidence, over objection, the search warrants and supporting affidavits which were issued for Raymond Shaughnessy's house and car. Stout contends the warrants and affidavits were improperly admitted because they constituted hearsay and served to improperly bolster the testimony of two crucial State witnesses as evidence of prior consistent statements. He cites primarily *People v. Carr* (1977), 53 Ill. App. 3d 492, and *People v. Tidwell* (1980), 88 Ill. App. 3d 808, in support. The State counters that Stout invited and/or waived the error, citing in support *People v. Denwiddie* (1977), 50 Ill. App. 3d 184, *People v. Hayes* (1975), 35 Ill. App. 3d 61, and *People v. Pallardy* (1981), 93 Ill. App. 3d 725.

■ We note Stout did not raise this issue in his post-trial motion. Ordinarily, under these circumstances, Stout is deemed to have

waived review of this issue. *People v. Jackson* (1981), 84 Ill. 2d 350; *People v. Gutierrez* (1982), 105 Ill. App. 3d 1059; *People v. Christiansen* (1981), 96 Ill. App. 3d 540.

However, the waiver rule is not absolute. The supreme court has held that substantial error may be considered if the error was so seriously prejudicial as to prevent the defendant from receiving a fair trial. (*People v. Jackson* (1981), 84 Ill. 2d 350, 359.) Supreme Court Rule 615(a) provides for this exception: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (87 Ill. 2d R. 615(a).) We believe the error claimed was substantial and will review it.

■ Here, when the State posed a question to its police officer witness on direct examination concerning what information he received from an informant which caused him to pursue the issuance of the search warrant, the defense counsel interposed an immediate objection to the question, stating that the search warrant would contain that information. The assistant State's Attorney indicated the question was meant to show what the officer's frame of mind was "in order to pursue the preparation of the search warrant." Stout argued, in essence, that because the officer's state of mind was not based on his own first-hand knowledge but, rather, that of the informant (Starks), any testimony on that point would be hearsay. The trial court, apparently misunderstanding the basis for defense counsel's objection, ordered the assistant State's Attorney to produce the warrants and affidavits as the "best evidence." Defense counsel said, "Thank you," seemingly agreeing with the court's order. However, after a brief recess during which time the assistant State's Attorney secured the documents, defense counsel immediately explained his objection was not that the warrant rather than the witness' testimony constituted the "best evidence" but, rather, that any testimony as to the officer's motivation for his subsequent action in securing the warrants was hearsay, since the officer's state of mind was *induced* by information received from the informant (Starks) and thus, constituted hearsay. Defense counsel explained to the court that the "best evidence" of the officer's motivation would be the officer's testimony itself, except for the fact that his testimony would constitute hearsay also, and thus was inadmissible. The trial court indicated it felt counsel was "trying to have it both ways," and concluded that the assistant State's Attorney would be allowed to question the officer concerning the warrant and supporting affidavits. Upon returning to open court, however, the officer was not questioned concerning the content of the warrants or affidavits, but was questioned as to the fact of

their existence. The warrants and supporting affidavits were later admitted into evidence, over defense counsel's renewed objection, and the jury thus had full access to them during its deliberations.

Due to counsel's strenuous objections and arguments concerning the admission of that evidence, and the fact that the trial court apparently misunderstood the basis for counsel's objection, we cannot accept the State's waiver or invited error argument, particularly since we find the basis for defense counsel's objection to be well-taken. *McCormick* had the following to say about the type of testimony which the State's initial question to the officer in the case at bar was no doubt designed to elicit:

> "In criminal cases, the arresting or investigating officer will often explain his going to the scene of the crime or his interview with the defendant, or a search or seizure, by stating that he did so 'upon information received' and this of course will not be objectionable as hearsay, but if he becomes more specific by repeating definite complaints of a particular crime by the accused, this is so likely to be misused by the jury as evidence of the fact asserted that it should be excluded as hearsay." McCormick, Evidence sec. 248, at 587 (2d ed. 1972).

The possibility here that the jury misused the information contained in those improperly admitted documents prevents a finding of harmless error. As pointed out by the defendant, in addition to being improperly admitted as hearsay, the documents also constituted evidence that Starks had made prior statements consistent with his in-court testimony. A well-established general rule prohibits the use of a witness' prior consistent statement since it improperly bolsters the witness' in-court testimony. In the absence of exceptions to the rule (*i.e.*, to refute the contention of recent fabrication of the in-court testimony, or a motive to testify falsely), bolstering a witness' testimony in this manner has been firmly established to amount to reversible error where the defendant has been substantially deprived of his right to a fair trial in that the error may reasonably have contributed to his conviction. (*People v. Tidwell* (1980), 88 Ill. App. 3d 808; *People v. Hudson* (1980), 86 Ill. App. 3d 335.) Although the jury acquitted Stout of the burglary and forgery charges, there is a reasonable possibility that the error contributed to the jury's decision to convict him of theft over $150. We note the exhibits were improperly admitted for a third reason as well: because the supporting affidavits clearly implicate Stout in another crime for which he was not then being tried, namely, the burglary of the Lakemoor Village Hall.

Because of our disposition of the first and third issues raised by

Stout, we find it unnecessary to consider the sentencing issue.

The judgment of the circuit court of McHenry County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

SEIDENFELD, P.J., and VAN DEUSEN, J., concur.