THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL JANIS, Defendant-Appellant.

First District (1st Division)   Nos. 1—89—2867, 1—91—2776 cons.

Opinion filed December 28, 1992.

806

Daniel J. Stohr, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Eileen O'Neill, and Clare M. Wesolik, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant Michael Janis was found guilty of possession of a controlled substance with intent to deliver. Defendant was sentenced to nine years' imprisonment. Defendant now appeals both the verdict and the trial court's subsequent dismissal of defendant's petition for post-conviction relief.

The record on appeal discloses the following facts. Defendant was charged by indictment with possession of a controlled substance with intent to deliver. At trial, following opening statements, the State called Chicago police officer James Ahern as a witness. Officer Ahern testified that he had been assigned to the narcotics unit of the organized crime division of the department. Officer Ahern stated that in October 1987 he was investigating the area around 9870 Cordoba Court in Orland Park, Illinois.

Officer Ahern testified that in late October 1987 he obtained a search warrant for apartment 1B at the above address. In response to the State's questions, Officer Ahern stated that the search warrant had been signed by Judge Urso in the very same building where this trial was taking place. The search warrant identified a person known at the time as "Dog," who was described as a Caucasian male, 6 feet 2 inches tall, 200 pounds, with brown eyes, brown hair and a mustache.

Officer Ahern then testified as to the appearance and location of apartment 1B in late October 1987. He also stated that prior to obtaining the search warrant, he had conducted surveillance of the apartment. In a two-hour period, Officer Ahern saw between 6 and 10 persons enter the apartment from the rear entrance and leave after less than five minutes. Officer Ahern indicated that from his experience in narcotics investigations, such activity was consistent with a narcotics operation such as a "dope house."

Officer Ahern further testified that he saw a particular person in the apartment during his surveillance. This person was described as a Caucasian male, over 6 feet tall, wearing horn-rimmed glasses, with black hair and brown eyes. Officer Ahern identified this person in court as defendant. Officer Ahern also saw defendant go to a Cadillac parked near the north end of the building and remove an object the size of a sandwich bag from the trunk.

Officer Ahern testified that he searched the apartment on October 19, 1987, pursuant to the aforementioned search warrant signed by Judge Urso. Before entering the apartment, Officer Ahern noticed a plastic bag that appeared to contain cocaine resting upon a television set. He and several other officers knocked on the apartment door, announced their office and stated that they had a search warrant. Receiving no response, the police forcibly entered the apartment to conduct their search. Officer Ahern took custody of the plastic bag he had observed on the television set. The police discovered clothing for a tall man, including army fatigues labelled with the name "Janis." The police also found a letter from a utility company addressed to defendant.

As a result of the search, Officer Ahern obtained an arrest warrant for defendant. On December 28, 1987, he received a tip from a certain individual regarding defendant's whereabouts. While conducting surveillance of the location identified in the tip, Officer Ahern and other officers found defendant, placed him under arrest, advised him of his *Miranda* rights and took him to the police station. According to Officer Ahern, defendant owned a 1986 Thunderbird at the time of his arrest.

Defendant was advised of his rights a second time at the police station. He was also given a written form explaining them. After reading the form, defendant indicated that he understood his rights but refused to sign the form. Under questioning, defendant stated that he was unemployed. According to Officer Ahern, when defendant was asked about narcotics found in his apartment, defendant replied that the dope belonged to him and friends. When asked who his friends were, defendant said that he was not telling the police and that the contraband was his.

Zaida Cordero, a criminalist chemist employed by the Chicago police department, was called as an expert witness. She indicated that she had weighed the contents of the bag which had been retrieved by Officer Ahern from the apartment and that the contents weighed 51.32 grams. Cordero conducted three different preliminary tests and two other tests on the contents of the bag. She concluded that the

bag contained cocaine. The tests did not reveal the presence of any other substance.

Robert Massura testified that he was in charge of the homeowner's association for the apartment building at 9870 Cordoba Court in Orland Park, Illinois. According to Massura, defendant started living in apartment 1B at that address in July 1987, and orally agreed to lease the apartment through April 1988. Massura stated that defendant paid $475 rent in cash every month. Massura testified that defendant gave him a pager number at which defendant could be contacted. Massura rented a second apartment to defendant for two months beginning January 1988.

Karen Williams, the keeper of records and security representative for the Illinois Bell Telephone Company, testified that defendant was listed as the subscriber for the telephone in apartment 1B at 9870 Cordoba Court in Orland Park during the October 28, 1987, billing period. The parties stipulated that a representative from Commonwealth Edison would testify that defendant was listed as the subscriber at the same address during the same time period, and that service was discontinued on October 23, 1987.

Defendant's mother testified that she helped defendant rent the apartment at issue in July 1987. She also stated that in September or October 1987 defendant had a roommate named Tom Dow. Defendant's mother visited the apartment on a weekly basis, cleaned the apartment on occasion, and did not see drugs there. She did not visit defendant after he moved out of the apartment in December 1987. She did not know whether defendant owned a car or held a job in October 1987.

Tom Dow testified that he lived with defendant in Orland Park for a couple of months in 1987. He testified that he did not have any drugs in the apartment during that time and that the cocaine found there did not belong to him.

Chicago police officer Ernest Cain testified that he had been one of the officers who arrested defendant. He testified that defendant had been advised of his *Miranda* rights twice and was given a written form explaining them. After reading the form, defendant indicated that he understood his rights but refused to sign the form.

Following closing arguments and deliberations, defendant was found guilty of possession of a controlled substance with intent to deliver. On September 28, 1989, the trial court denied defendant's motion for a new trial. Defendant filed his notice of direct appeal on October 24, 1989. On March 25, 1991, defendant filed a petition for post-conviction relief with the trial court. The trial court dismissed

the petition on August 12, 1991. Defendant filed a notice of appeal regarding the dismissal on August 19, 1991. This court consolidated the appeals.

## I

Defendant contends that the State improperly used the existence and contents of the search warrant to prove its case. The introduction of such evidence may prejudice a defendant where the evidence: (1) is inadmissible hearsay; (2) improperly bolsters the credibility of a witness as a prior consistent statement; or (3) is argued by the State as evidence of guilt. (See *People v. Stout* (1982), 110 Ill. App. 3d 830, 837, 443 N.E.2d 19, 24-25; *People v. Okundaye* (1989), 189 Ill. App. 3d 601, 618-19, 624 (Murray, P.J., and Coccia, J., specially concurring), 545 N.E.2d 505, 517, 520-21 (Murray, P.J., and Coccia, J., specially concurring).) Nevertheless, statements detailing the course of a police investigation introduced for the limited purpose of showing why the police behaved as they did are not hearsay. (See *People v. Sanchez* (1987), 163 Ill. App. 3d 186, 192-93, 516 N.E.2d 556, 561; *People v. Hunter* (1984), 124 Ill. App. 3d 516, 529, 464 N.E.2d 659, 671.) Thus, we address each of the concerns raised by the use of the search warrant at trial.

■ First, there is the question of whether the warrant was used to introduce hearsay, which is an out-of-court statement offered to prove the truth of the matter asserted. (*E.g., People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223.) In this case, the State referred to the contents of the warrant on numerous occasions—in its opening statement, on direct examination of Officer Ahern and in closing arguments. In particular the record indicates that the State referred on several occasions to the description of the person mentioned in the warrant and argued that defendant, not Tom Dow, matched this description. It therefore appears that the contents of the warrant were used by the State in an attempt to prove that defendant was the possessor of the cocaine. Such use goes beyond a recitation of the investigatory procedure in this case.

However, the reason that the use of hearsay evidence is generally considered prejudicial is that defendant's right to confront and cross-examine the witnesses against him is violated because the declarant is not present at trial. (See *People v. Smith* (1967), 38 Ill. 2d 13, 15, 230 N.E.2d 188, 190.) In this case, the description of the person in the search warrant appears to have been provided by Officer Ahern, who did testify and was cross-examined by defendant; thus, defendant was not unfairly prejudiced. (See *People v. Marshall* (1988), 165 Ill. App.

3d 968, 977-78, 521 N.E.2d 538, 544.) Moreover, contrary to defendant's assertions, the warrant was not the only description of the defendant; Officer Ahern identified defendant as the man he observed during surveillance of the apartment. Thus, while the State's argument that the warrant description did not fit Tom Dow may have been improper, it was not reversible error.

■ Second, there is the question as to whether the evidence improperly bolstered Officer Ahern's credibility. In *Marshall*, this court deemed the identical argument waived because defense counsel failed to object to the introduction of the contents of the search warrant at trial. (*Marshall*, 165 Ill. App. 3d at 977-78, 521 N.E.2d at 544.) In this case, defendant failed to object either at trial or in his post-trial motion for a new trial. Defendant argues that this court should consider the error under the plain error doctrine. However, the cases defendant relies upon are distinguishable. In *Stout*, defense counsel strenuously objected at trial and the trial court misunderstood the objection. (*Stout*, 110 Ill. App. 3d at 836-37, 443 N.E.2d at 24.) In *People v. Eddington* (1984), 129 Ill. App. 3d 745, 770, 473 N.E.2d 103, 120-21, this court was concerned with the credibility of an extensively impeached co-conspirator's testimony. Thus, following *Marshall*, the argument is waived.

■ Third, there is the question as to whether the State improperly argued the search warrant as evidence of guilt. In this regard, defendant argues that the use of the description in both the opening statement and closing argument to show the identity of the person controlling the apartment, together with the references to the fact that the warrant was signed by Judge Urso, was improper. However, the *Marshall* court concluded that repeated references to the contents of a search warrant, which continued even after the trial court had sustained objections to them, did not rise to the level of plain error. (See *Marshall*, 165 Ill. App. 3d at 978-79, 521 N.E.2d at 545.) In addition, a reference to the fact that a judge signed a warrant does not *per se* place a judicial imprimatur of guilt on defendant. (See *People v. Brandon* (1990), 197 Ill. App. 3d 866, 880, 557 N.E.2d 1264, 1273 (involving an arrest warrant).) In sum, the use of search warrant evidence and argument in this case does not rise to the level of reversible error.

## II

Defendant claims that he was denied a fair trial by admission of testimony that he told the police that the cocaine belonged to him. Relying on *People v. Morgan* (1977), 69 Ill. 2d 200, 370 N.E.2d 1063,

*overruled on other grounds, People v. Schott* (1991), 145 Ill. 2d 188, 582 N.E.2d 960, defendant argues that the record contains only conclusory testimony by Officers Ahern and Cain that defendant received "his *Miranda* warnings" and that such testimony is an insufficient foundation for admitting the statements.

■ The requirement that the warnings be spelled out in testimony flows from the general rule that when the voluntariness of a statement is called into question, the State bears the burden of proving that the statement was voluntarily made. (*E.g., People v. Colson* (1989), 187 Ill. App. 3d 423, 431, 543 N.E.2d 282, 286.) In this case, the record indicates that defendant failed to call the voluntariness of the statement into question. Consequently, the issue is waived on appeal. See *People v. Watkins* (1981), 98 Ill. App. 3d 889, 897, 424 N.E.2d 701, 706-07.

### III

Defendant argues he was denied a fair trial by the State's introduction of unfairly prejudicial evidence and inflammatory argument in addition to the search warrant evidence and argument. In particular, defendant claims he was unfairly prejudiced by the State's: (1) references to Officer Ahern as assigned to the "Organized Crime" division of the department; (2) references to defendant's "alias" or nickname; (3) introduction of defendant's "mug shot" into evidence; (4) references to the fact that defendant had been placed "under surveillance;" (5) introduction of testimony as to the practices of narcotics dealers; and (6) closing argument, which characterized the lifestyle of narcotics dealers without evidence to support that characterization.

Defendant admits that he failed to object to any of the above at trial. The record indicates that defendant failed to object to any of them in his motion for new trial. Thus, the arguments are waived on appeal.

■ Assuming *arguendo* that the arguments were not waived, they would not have persuaded this court. As to the "organized crime" references, this court has held under similar circumstances that a reference to an officer's position in the department does not *per se* impute involvement in organized criminal activity. (See *People v. Boulrece* (1990), 195 Ill. App. 3d 666, 670, 552 N.E.2d 1166, 1169-70 (reference that officer was part of "Gang Crimes Unit").) Although it is improper to introduce alias evidence where it only suggests prior criminal activity, the State may make such a reference if it aids in the identification of the defendant. (See *People v. Brown* (1986), 146 Ill. App. 3d 101, 105, 496 N.E.2d 1020, 1023.) Here, the references were

elicited to show how Officer Ahern identified defendant in the early stages of the investigation and were not error. "Mug shots" of prior arrests may in some instances be excluded as "other crimes" evidence. (*E.g.*, *People v. Wheeler* (1979), 71 Ill. App. 3d 91, 388 N.E.2d 1284.) In this case, however, the record indicates that the photograph in question was taken as a result of this case, not a prior case. Similarly, references to the fact that defendant was "under surveillance" may be unfairly prejudicial as "other crimes" evidence. (*People v. Spiezio* (1982), 105 Ill. App. 3d 769, 434 N.E.2d 837.) Here, the references were to defendant being under surveillance in this investigation.

As for the references to the normal practices of drug dealers, defendant points to testimony indicating that narcotics dealers will typically attempt to dispose of narcotics down a toilet when police arrive on the scene and that narcotics dealers will "cut" or dilute controlled substances in order to increase profits. Defendant points out that there was no evidence presented that defendant did either of these two things. However, the former testimony was elicited to explain why the police followed the procedure of entering defendant's bathroom almost immediately upon entering defendant's apartment. The latter practice of dilution, referred to in expert testimony and in closing argument, was relevant insofar as possession of 51 grams of undiluted cocaine is indicative of intent to distribute.

Defendant argues that he was denied the right to cross-examine Officer Ahern on the typical practices of narcotics dealers. The scope of cross-examination rests largely within the discretion of the trial court. (*E.g.*, *People v. Williams* (1989), 185 Ill. App. 3d 840, 860, 541 N.E.2d 1175, 1189.) The record indicates that objection was sustained to questions regarding whether money or drug paraphernalia is typically found on premises used for narcotics transactions. The presence of large sums of money or drug paraphernalia is indicative of intent to distribute. Consequently, it may have been error to prevent defendant from establishing whether these items are typically recovered in the police search. However, the record indicates that defendant was allowed to cross-examine on the issue of whether the police recovered paraphernalia or anything normally used to dilute narcotics as a result of the search in this case. Thus, given that the testimony regarding entry of defendant's bathroom could be admitted as detailing the police procedure in this case and that defendant was able to cross-examine Officer Ahern on whether diluting materials were found in the apartment, defendant was not unfairly prejudiced in this regard.

Finally, there are the references to the easy and greed-driven lifestyle of narcotics dealers in the State's closing arguments. It is well

settled that the parties are given considerable leeway in closing arguments and that the scope of such arguments is within the discretion of the trial judge. In this case, the arguments that the narcotics trade is all about greed and easy money and that drugs are a poison killing this country appear to be general in nature, rather than unsupported assertions of what facts would be proved in this case. (See *Eddington,* 129 Ill. App. 3d at 778, 473 N.E.2d at 126.) The comments were not inflammatory on the scale of those in the cases relied upon by defendant. Thus, the comments do not warrant reversal in this case.

## IV

■ Next, defendant argues that he was denied a fair trial because the jury was not given Illinois Pattern Jury Instructions, Criminal, No. 3.17 (2d ed. 1981) (IPI Criminal 2d), which states:

"When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined by you in light of the other evidence in the case." (IPI Criminal 2d No. 3.17.)

Defendant admits, however, that he did not tender this instruction at trial. Thus, defendant has waived the argument.

## V

Defendant contends that the failure of his counsel to raise the issues presented in sections I through IV above amounts to a denial of his right to effective assistance of counsel, guaranteed by the sixth amendment to the United States Constitution. To prove ineffective assistance of counsel, defendant must prove both prongs of the test set forth in *Strickland v. Washington* (1984), 466 U.S. 688, 80 L. Ed. 2d 674, 104 S. Ct. 2052. (*People v. Albanese* (1984), 104 Ill. 2d 504, 526 N.E.2d 1246.) The requirements are that the errors must be so great that counsel is not acting as "counsel" as guaranteed by the sixth amendment and, second, that the errors were so great as to deprive defendant of a fair trial. (*Strickland,* 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) Counsel's competence is to be determined from a consideration of the totality of counsel's conduct, not isolated incidents, and a reviewing court will not extend its inquiry into areas involving the exercise of judgment, discretion, trial tactics or strategy. *People v. Thurman* (1988), 169 Ill. App. 3d 996, 1005, 523 N.E.2d 1184.

■ First, defendant complains of defense counsel's failure to object to testimony and argument regarding the issuance and contents

of the search warrant. As the introduction of the testimony and argument was not reversible error, the failure to object was not, by itself, ineffective assistance of counsel. *E.g., People v. Guzman* (1990), 208 Ill. App. 3d 525, 537, 567 N.E.2d 500, 509.

Second, there is defense counsel's failure to move to suppress defendant's inculpatory statements to the police. Our courts have been reluctant to find ineffective assistance of counsel on this basis, holding either that the filing of suppression motions is a matter of discretion and judgment or that defendant failed to show that the outcome probably would have changed had the motion been filed. (*People v. Fernandez* (1987), 162 Ill. App. 3d 981, 987-88, 516 N.E.2d 366, 370.) Here, the record on direct appeal contains testimony that defendant was orally informed of his rights under *Miranda* and that defendant read a form containing the *Miranda* warnings. A similar record prompted this court to conclude in a prior case that defendant could not show ineffective assistance of counsel. (*Cf. People v. Deveaux* (1990), 204 Ill. App. 3d 392, 401-402, 561 N.E.2d 1259, 1265 (police officer testified that he read defendant *Miranda* warnings from police handbook, but could not remember all of the rights when testifying).) Thus, based on the record on direct appeal in this case, defendant has failed to show that the failure to move to suppress defendant's statements was unreasonable or that the outcome would have differed had such a motion been filed.

Defendant's post-conviction petition and affidavit alleges that his statements were coerced, but the record on direct appeal contains no evidence in support of this contention. Indeed, the record on direct appeal contains testimony to the contrary.

Third, there is defense counsel's failure to object to a number of statements and arguments which defendant believes were unfairly prejudicial to his case. As noted above, only one or two of the State's closing arguments could be considered improper. The failure to object to these comments is not, by itself, ineffective assistance of counsel.

■■ Finally, there is defense counsel's failure to request or tender the accomplice-witness instruction. In this case, the failure to tender the instruction could be considered unreasonable. The record indicates that one of defense counsel's main strategies was to argue that the State had not established beyond a reasonable doubt that the cocaine belonged to defendant. Given this strategy, it seems highly improbable that there was a strategic reason for failing to ask that the jury be instructed to consider Dow's testimony with suspicion. After all, if the cocaine did not belong to defendant, Dow would have been the most likely suspect.

There nevertheless remains the question as to whether the outcome would probably have been different had the instruction been tendered. The evidence presented to the jury included defendant's admission of possession to the police and Dow's denial of possession. Yet even if the jury had not heard defendant's statements to the police and disbelieved Dow after receiving the accomplice-witness instruction, the jury could have concluded that both Dow and defendant were involved in narcotics transactions. Moreover, the record indicates that the jury was instructed to consider the testimony of each witness in light of any interest, bias or prejudice he or she may have. (See IPI Criminal 2d No. 1.02.) Furthermore, we note that Dow not only denied possession of the cocaine, but also testified that he did not see defendant possess the cocaine. Thus, Dow's testimony did not directly inculpate defendant. Under these circumstances, we cannot conclude that the outcome at trial would have differed, but for the failure to tender the instruction.

■ The ultimate issue, therefore, is whether the alleged deficiencies in representation cumulatively deprived defendant of effective assistance of counsel. It is well settled that defendant is entitled to a competent defense, not a perfect or successful one. (*E.g., Fernandez,* 162 Ill. App. 3d at 987, 516 N.E.2d at 370.) In this case, although other attorneys may have emphasized different aspects of defendant's case or objected to particular arguments and testimony, we cannot conclude that the overall representation in this case fell below an objective standard of reasonableness.

## VI

■ Defendant contends that the State failed to prove him guilty beyond a reasonable doubt. This court will disturb a criminal conviction only when the evidence is so improbable or unsatisfactory that it raises a reasonable doubt as to defendant's guilt. (*E.g., People v. Brandon* (1990), 197 Ill. App. 3d 866, 874, 557 N.E.2d 1264, 1269.) The standard on appeal is whether a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Jimerson* (1989), 127 Ill. 2d 12, 43-44, 535 N.E.2d 889, 903.) Thus, in this case, the State was required to prove that: (1) defendant knew of the presence of the controlled substance; (2) that it was in defendant's immediate possession or control; and (3) defendant intended to deliver the substance. See *People v. Pintos* (1989), 133 Ill. 2d 286, 291-92, 549 N.E.2d 344, 346.

The first element, knowledge, is rarely susceptible of direct proof, but may be inferred from the declarations or conduct of the defendant. (See *Pintos*, 133 Ill. 2d at 292, 549 N.E.2d at 347.) Where a controlled substance is found on premises under a defendant's control, both knowledge and possession may be presumed, absent other facts creating a reasonable doubt. (*People v. Trask* (1988), 167 Ill. App. 3d 694, 707, 521 N.E.2d 1222, 1231; see also *People v. Gallagher* (1990), 193 Ill. App. 3d 566, 550 N.E.2d 255 (constructive possession proved in same way); *People v. Morrison* (1988), 178 Ill. App. 3d 76, 532 N.E.2d 1077 (same).) A showing of joint control of premises does not *per se* create reasonable doubt. *Trask*, 167 Ill. App. 3d at 707, 521 N.E.2d at 1231.

In this case, the record indicates that the police observed defendant in the apartment after observing activity consistent with narcotics transactions at the apartment building. The record indicates that prior to execution of the search warrant, the police observed the bag of cocaine in plain view upon a television set in the apartment. The record also indicates that defendant stayed away from the apartment after the cocaine was seized from the apartment. The record indicates that defendant paid the monthly rent (in cash) and was the listed subscriber for utilities. From this record, a rational trier of fact could infer that defendant had been aware of the presence of the cocaine in an apartment under his control. Consequently, a rational jury could have found defendant constructively possessed the cocaine.

It is worth noting that the above finding need not have been based on either defendant's statements to the police or the testimony of Tom Dow. Without that evidence, a jury could have concluded that defendant and Dow shared control of the apartment. Nevertheless, the evidence introduced at trial of defendant's presence during the surveillance and absence following the seizure permitted the jury to infer that defendant was aware of the presence of the cocaine. Defendant has not shown that similar evidence was introduced regarding Dow.

Finally, the intent to deliver a controlled substance may be inferred from a number of factors, including possession of a quantity of drugs in excess of an amount which can be viewed as designed for personal use. (*People v. Romero* (1989), 189 Ill. App. 3d 749, 756, 546 N.E.2d 7, 11.) The record in this case shows that the police observed activity consistent with narcotics transactions at defendant's apartment and that defendant was present in the apartment. The record also indicated that the police later discovered over 51 grams of cocaine in defendant's apartment; testimony established that this

amount of cocaine would have a street value in the neighborhood of $7,000. The jury could have inferred from this record that defendant intended to deliver the cocaine. In sum, the evidence in this case, viewed in the light most favorable to the prosecution, could lead a rational jury to find defendant guilty of the offense with which he was charged.

## VII

Finally, defendant appeals the dismissal of his post-conviction petition without an evidentiary hearing. To merit an evidentiary hearing, defendant's post-conviction petition must make a substantial showing that defendant's constitutional rights have been violated. The petition must contain specific factual allegations, rather than conclusory statements. It is defendant's burden to support the factual allegations by affidavits, records or other evidence containing specific facts. (*People v. Barr* (1990), 200 Ill. App. 3d 1077, 1080, 558 N.E.2d 778, 780.) The trial court's disposition of a post-conviction petition will not be reversed unless it is manifestly erroneous. *People v. White* (1989), 198 Ill. App. 3d 781, 783-84, 556 N.E.2d 535, 537.

On appeal, defendant raises the allegations in the petition and his affidavit that his confession was coerced by the police in the presence of a witness defense counsel failed to call and that defense counsel was unprepared and inebriated throughout the proceedings in this case. These allegations do not appear of record; thus, our decision on direct appeal could not act as *res judicata* or waiver. (*Barr*, 200 Ill. App. 3d at 1079-80, 558 N.E.2d at 780.) However, in *Barr*, this court affirmed the dismissal of a petition attacking counsel for failing to call witnesses where defendant submitted only his own affidavit and not those of the witnesses themselves. (*Barr*, 200 Ill. App. 3d at 1080, 558 N.E.2d at 780.) In this case, defendant failed to supply the affidavit of the person who allegedly witnessed the coercion of defendant's statements. Defendant also failed to supply the affidavits of the persons named in defendant's affidavit who allegedly witnessed counsel drinking rather than preparing defendant's case. Consequently, defendant has failed to show that dismissal of his petition was manifestly erroneous.

For all of the aforementioned reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

BUCKLEY, P.J., and MANNING, J., concur.