# Illinois Official Reports

## Appellate Court

---

### *People v. Evans*, 2018 IL App (4th) 160686

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROY A. EVANS, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-16-0686 |
| Filed<br>Rehearing denied | November 8, 2018<br>December 5, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 16-CF-296; the Hon. Thomas J. Difanis, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Jacqueline L. Bullard, and James Henry Waller, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE TURNER delivered the judgment of the court, with opinion.<br>Justices Knecht and Cavanagh concurred in the judgment and opinion. |

**OPINION**

¶ 1        In May 2016, a jury found defendant Roy A. Evans guilty of aggravated domestic battery and domestic battery. On July 1, 2016, the trial court sentenced defendant to three years in prison. Defendant appeals, arguing the court (1) improperly restricted his self-defense claim by prohibiting him from introducing evidence relating to the complainant's history of combative behavior and (2) erred in relying "almost entirely" on an uncharged prior incident to deny defendant a community-based sentence. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3        On February 29, 2016, the State charged defendant by information with domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2016)) and aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2016)), stemming from an incident between defendant and the complainant, Jessica Cunningham.

¶ 4        On May 16, 2016, the first day of defendant's trial, both the State and defendant filed motions *in limine*. The State's motion asked the trial court to exclude evidence that Cunningham was arrested for driving under the influence (DUI) and submitted to field sobriety tests at the same time defendant was arrested on the pending charges. According to the State's motion, the field sobriety tests, Cunningham's performance on those tests, and the police officer's opinion as to Cunningham's performance on the tests, were irrelevant to defendant's case and improperly went toward proving Cunningham guilty of a crime.

¶ 5        Defendant's motion *in limine* asked the trial court to allow him to introduce evidence of other bad acts committed by Cunningham, including her pending DUI case in Champaign County (case No. 16-DT-85), which defendant claimed was a crucial part of his defense because Cunningham was intoxicated and driving 110 miles per hour on the interstate with defendant and their young child in the vehicle. Cunningham refused defendant's request to stop the car, and a fight occurred. Defendant argued this fight was the basis for the pending charges against him. Defendant also wanted to introduce evidence that Cunningham had a pending case in Vermilion County (case No. 16-CF-267) for damaging his property and a video of Cunningham purportedly lighting defendant's beard on fire with a cigarette. According to defendant, this was relevant evidence of a pertinent character trait admissible under Illinois Rule of Evidence 404(a)(2) (eff. Jan. 1, 2011) and reflected on Cunningham's credibility.

¶ 6        The trial court ruled that defendant could ask the police officers who were involved in the stop about Cunningham's level of sobriety. The court also told defense counsel she could (1) examine any witness with regard to their level of sobriety at the time they witnessed what occurred and (2) ask about Cunningham's blood alcohol content level at the time of the incident. The court ruled defendant could not introduce evidence of Cunningham's actions that occurred after the charged incident in this case, *i.e.*, the subject of the Vermilion County case and the beard-burning incident.

¶ 7        Cunningham testified she was 21 and managed a fast-food restaurant. She and defendant had a daughter together and were dating at the time of the charged incident. On February 28, 2016, Cunningham drove herself, defendant, and their daughter to the mall in Champaign. While in the mall, defendant began talking to another woman while holding his and

Cunningham's child. Cunningham felt disrespected by this, and she took their child to the car. She intended to leave defendant at the mall, but he got in the car before she left. Defendant asked what Cunningham's problem was. She told him he was disrespecting her, and she wanted to go home. Defendant then hit her, and she hit him back. He then started choking her with both his hands—one hand in front of her neck, the other in the back. She felt like she was losing her breath.

¶ 8 She told him to stop putting his hands on her. After she started driving home, a random car approached the side of their vehicle at an intersection by the mall and asked if she was alright. She made eye contact with the man but did not say anything. The man then drove off. While driving back to Danville, defendant continued to put his hands on her. This included choking her while she was on the interstate. A police officer pulled her over. She testified that she was emotional, upset, and scared. She jumped out of her car and told the police officer defendant had been putting his hands on her. She testified she hit defendant once while she was driving.

¶ 9 On the night of the incident, Cunningham noticed marks on her neck that looked like scratch marks. They were dark. She also had a red mark on her face that looked like someone hit her. She did not have any marks prior to going to the mall.

¶ 10 She was arrested by the officer who pulled her over and was charged with DUI. The charge was still pending. Cunningham stated she was 4 feet 11 inches tall and weighed 89 pounds.

¶ 11 Trooper Adam Traxler of the Illinois State Police testified that he stopped Cunningham for driving 105 miles per hour. When he approached the car, Cunningham "bailed out" of the vehicle. Defendant was in the passenger seat, and an infant was in the back in a child restraint. Cunningham appeared upset, her face was red, and she had tears in her eyes. He walked with Cunningham back toward his vehicle. He then saw defendant was out of the car. Traxler yelled numerous times at defendant to get back in the vehicle. Defendant was also angry and upset. Defendant was yelling at Cunningham, "[D]o you want me to go to jail? I love you." Defendant eventually got back in Cunningham's vehicle. Traxler then began talking to Cunningham again. He noticed she had what looked like scratches on her face and some bruising on her neck and throat area. He eventually arrested Cunningham for DUI. After her arrest, Cunningham continued to cooperate with him. Cunningham told Traxler that defendant had scratched her and had put his hands around her throat. Defendant told Traxler both he and Cunningham had been drinking.

¶ 12 Officer Shane Standifer of the Champaign Police Department testified that he was dispatched to assist with the stop. After speaking with Trooper Traxler, Standifer spoke with defendant. Defendant said Cunningham was a different person when she was drinking. Standifer also spoke with Cunningham. He noticed some small marks on her cheek and some discoloration on her throat. After speaking with Cunningham, he arrested defendant for domestic battery and transported him to the Champaign County jail.

¶ 13 At the jail, defendant made a statement regarding the incident at the mall. According to defendant, Cunningham became angry because he was talking to another woman at the mall. Defendant followed her out to the mall's parking lot, and they began arguing in the car. While on the interstate driving toward Danville, Cunningham began punching and slapping defendant while she was driving. At some point, defendant bit her on the cheek so she would stop hitting him. Defendant denied choking Cunningham. Defendant did not have any marks on his face. After speaking with defendant, Officer Standifer spoke with Cunningham. At that

time, the mark on her cheek looked more like a human bite mark, and the marks on her neck had darkened significantly.

¶ 14     Defendant testified on his own behalf. According to his testimony, he and Cunningham had a child together, and they had been engaged in an "on again, off again" relationship for three years. He testified that he had dated a lot of other women during this same period and even married Cunningham's cousin. Cunningham would get very angry about him dating other women. On the day of the incident, he and Cunningham were in a dating relationship. Defendant was sobering up from the night before, and Cunningham had been drinking vodka that morning. She was emotional, grieving over her grandfather's death. Defendant, Cunningham, and their daughter went to the mall in Champaign. While talking to a woman he called his "auntie," Cunningham approached him and took their child from him. Defendant kept talking to the other woman. He then walked around the mall for 20 minutes looking for Cunningham. He found Cunningham and the child in her car. Cunningham was angry and hit him with a "backhand fist." Defendant began blocking her attempts to hit him and tried explaining who the woman in the mall was. Defendant denied hitting Cunningham but admitted biting her because she was on top of him and would not release him. At some point, she stopped trying to hit him and drove onto the interstate. Defendant broke up with her, and she started driving very fast.

¶ 15     Defendant testified that a police officer pulled her over. Cunningham got out of the car. He also got out of the car to tell the officer she had been drinking. Defendant was arrested and taken to the county jail. Defendant testified that he told the police about Cunningham attacking him. Defendant testified he was 5 feet 9 inches tall and weighed 250 pounds.

¶ 16     The jury found defendant guilty of both charges.

¶ 17     On June 13, 2016, defendant filed a motion for acquittal or a new trial. Defendant argued that the trial court erred by denying his motion *in limine* to include Cunningham's bad acts, specifically her pending case in Vermilion County (case No. 16-CF-267) and her attempt to burn his beard.

¶ 18     On July 1, 2016, the trial court held a hearing on defendant's posttrial motion and denied the motion. The court then moved to the sentencing phase of the case. Officer Christopher Comrie of the Danville Police Department testified that he responded to a reported battery in progress involving defendant on August 2, 2014. Morgan Britt, who was defendant's wife at that time, told Officer Comrie that defendant had punched her repeatedly in the face with a closed fist. She had a small cut to her right cheek, swelling above her left eye, and her upper lip was also swollen. Britt said the fight happened when defendant told her he wanted a divorce and Britt said she wanted to work things out. Defendant became angry and attacked her.

¶ 19     On cross-examination, Officer Comrie testified that he did not know whether defendant was ever charged with an offense stemming from the alleged encounter with Britt.

¶ 20     The trial court sentenced defendant to three years in the Department of Corrections with credit for 47 days previously served.

¶ 21     On July 29, 2016, defendant filed a motion to reconsider his sentence. Defendant argued that the trial court gave too much weight to the deterrent factor and erred in finding a community-based sentence would deprecate the seriousness of the offense. Defendant also argued that the court did not give sufficient weight to his age, lack of criminal history,

employment history, and familial support system. According to defendant, the court also did not give adequate consideration to defendant's rehabilitative potential.

¶ 22    In September 2016, the trial court denied defendant's motion to reconsider sentence.

¶ 23    This appeal followed.

¶ 24                                II. ANALYSIS

¶ 25                          A. Self-Defense Evidence

¶ 26    Defendant first argues that this court should reverse his conviction and remand this case for a new trial because the trial court improperly restricted his ability to fully present his self-defense case by prohibiting him from introducing evidence relating to Cunningham's history of combative behavior. Defendant claims he should have been allowed to introduce evidence of a pending case against Cunningham in Vermilion County (case No. 16-CF-267), where she was charged with damaging defendant's siding and vehicle. Defendant also claims the court erred in denying his request to use a "phone video" purportedly showing Cunningham pouring liquid on defendant and setting fire to his beard with a cigarette. We note the record reflects both of these alleged incidents occurred after the charged incident at issue in this case.

¶ 27    On the morning of the first day of trial, the trial court ruled defendant could not introduce evidence of either incident. The court was informed the incidents occurred after the charged offense in this case. The court stated, "I'm not going to allow any testimony about some subsequent offense that may or may not have occurred after this incident." The court later stated, "The fact that she may be upset with him subsequent to this offense, I don't believe is relevant and that evidence and testimony is not going to be allowed."

¶ 28    Defendant argues it is irrelevant whether evidence of Cunningham's "propensity for violence took place before or after the events that led to defendant's arrest." However, defendant cites no authority supporting this specific assertion.

¶ 29    Section 7-1 of the Criminal Code of 2012 (720 ILCS 5/7-1(a) (West 2016)) provides in part that "[a] person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." With regard to a self-defense claim, our supreme court has stated:

> "It is well established that in order to raise a claim of self-defense, a defendant must present evidence supporting each of the following elements which justify the use of force in defense of a person: (1) that force had been threatened against defendant; (2) that defendant was not the aggressor; (3) that the danger of harm was imminent; (4) that the force threatened was unlawful; (5) that defendant actually believed that a danger existed, that the use of force was necessary to avert the danger, and that the kind and amount of force actually used was necessary; and (6) that defendant's beliefs were reasonable." *People v. Morgan*, 187 Ill. 2d 500, 533, 719 N.E.2d 681, 700 (1999).

When a defendant is asserting self-defense, evidence of the victim's aggressive and violent character may support a self-defense claim by showing the defendant's knowledge of the victim's aggressive and violent character affected his perception of the victim's actions and his reaction to those actions. See *People v. Lynch*, 104 Ill. 2d 194, 200, 470 N.E.2d 1018, 1020 (1984).

¶ 30    However, information unknown to a defendant at the time of the incident could not have impacted the defendant's perceptions of the victim's actions. *Lynch*, 104 Ill. 2d at 200. That being said, information showing a victim's "aggressive and violent character is relevant to show who was the aggressor, and the defendant may show it by appropriate evidence, regardless of when he learned of it." *Lynch*, 104 Ill. 2d at 200. In *Lynch*, the supreme court was referring to the victim's three battery convictions, which occurred prior to the charged offense against the defendant in that case. *Lynch*, 104 Ill. 2d at 197. *Lynch* does not stand for the proposition a victim's actions after the day of the charged offense should be admissible to show whether the victim was the aggressor at the time of the charged offense. Defendant provided this court with no authority supporting its expansion of the supreme court's holding in *Lynch*.

¶ 31    We note the State appears to concede that the trial court erred in not allowing defendant's use of the phone video. According to the State:

> "The State concedes that the trial court should have found admissible *Lynch* evidence *if* a video showed the victim pouring liquid on defendant and 'setting fire to his beard with a cigarette.' [Record Citation.] Such evidence would have been relevant to show 'who was the aggressor.' *Lynch*, 104 Ill. 2d at 200, 470 N.E.2d at 1020." (Emphasis added.)

However, we do not accept the State's concession. Like defendant, the State failed to address the fact that the alleged incident on the phone video—which we note is not part of the record for this court to review—occurred after the charged incident in this case.

¶ 32    In addition, we find defendant's reliance on *People v. Stout*, 110 Ill. App. 3d 830, 443 N.E.2d 19 (1982), misplaced in this case. The State witness in question in *Stout* was an alleged accomplice of the defendant, not an alleged victim of the defendant. Further, the defendant in *Stout* denied any involvement in the charged offenses. *Stout*, 110 Ill. App. 3d at 830-32. Finally, the defendant in *Stout* argued he wanted to show the State's witness was biased and had a motive for testifying against him, *i.e.*, the hope the State would not revoke his probation for other bad acts. *Stout*, 110 Ill. App. 3d at 832.

¶ 33    In the case *sub judice*, the jury knew Cunningham was not an impartial occurrence witness. She was the alleged victim. Cunningham's motives for testifying against defendant were clear to the trier of fact, *i.e.*, she wanted him punished. Further, defendant did not ask the trial court to allow this evidence to show Cunningham was biased or had some unknown motive for testifying against him. Instead, defendant asked the trial court to allow evidence of these alleged incidents pursuant to Illinois Rule of Evidence 404(a)(2) (eff. Jan. 1, 2011) to establish Cunningham's character.

¶ 34    We agree with the State that defendant forfeited any claim that this evidence was admissible to show Cunningham's possible bias or motive. However, regardless of forfeiture, defendant has not established that the trial court abused its discretion in not allowing defendant to use evidence of Cunningham's alleged actions, which occurred after the day of the charged incident in this case.

¶ 35                              B. Sentencing Hearing

¶ 36    Defendant next argues that the trial court erred by not giving him a community-based sentence. We will not disturb a trial court's sentencing decision unless the trial court abused its

discretion. A court can be found to have abused its discretion if it considered an improper aggravating factor. *People v. Joe*, 207 Ill. App. 3d 1079, 1085, 566 N.E.2d 801, 807 (1991). A court is presumed to have considered only proper sentencing factors unless the record affirmatively establishes otherwise. *People v. Daly*, 2014 IL App (4th) 140624, ¶ 29, 21 N.E.3d 810.

¶ 37     According to defendant, the trial court erred in considering Officer Comrie's testimony about defendant's alleged prior domestic battery incident involving Britt Morgan. Defendant argues that the State should have had Britt Morgan testify instead of Officer Comrie. Citing *People v. Dominique*, 86 Ill. App. 3d 794, 408 N.E.2d 280 (1980), defendant acknowledges hearsay testimony is not *per se* inadmissible at sentencing. However, he argues the testimony should be given "by witnesses with firsthand knowledge relating to other offenses or other charges pending against a defendant [that] can properly be introduced and relied upon by the court when imposing sentence where the witnesses are subject to cross-examination." *Dominique*, 86 Ill. App. 3d at 809.

¶ 38     The State argues that defendant forfeited any argument with regard to Officer Comrie's testimony because he did not raise this argument in his motion to reconsider sentence. Pursuant to Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016), we agree with the State. However, regardless of forfeiture, the trial court did not err in considering Officer Comrie's testimony. We note hearsay testimony may be introduced when a police officer offers testimony regarding his or her official investigation of an offense. *People v. Aleman*, 355 Ill. App. 3d 619, 627, 823 N.E.2d 1136, 1143 (2005).

¶ 39     Defendant also argues that the trial court erred in not giving him a community-based sentence. Citing section 5-6-1(a) of the Unified Code of Corrections (730 ILCS 5/5-6-1(a) (West 2016)), defendant argues that a sentence of probation is required unless the trial court determines a prison sentence is necessary for the protection of the public or probation would deprecate the seriousness of the offense and be inconsistent with the ends of justice. According to defendant, "the trial court is statutorily required to consider the nature and circumstances of the offense and the history, character and condition of the offender."

¶ 40     The trial court in this case specifically indicated it considered whether a community-based sentence was appropriate, taking into consideration defendant's history, character, and condition. The court noted defendant had been gainfully employed for many years, had always maintained employment, had earned his general equivalency degree (GED), and was still a young man.

¶ 41     However, the trial court also noted defendant had a history of anger issues. In addition to his conviction for domestic battery in this case, he had a prior conviction for resisting a peace officer in 2013. The court also noted Officer Comrie testified defendant was allegedly involved in another domestic battery in 2014.

¶ 42     In addition, the trial court appears to have been troubled by defendant's presentence report, which indicated defendant believed "women" were the major problem in his life. The court found that this statement said a lot about defendant, considering defendant battered the victim in this case and had allegedly battered another woman in the past. The court was referring to the following paragraph from the presentence report:

> "Upon completion of the interview, [defendant] was asked what he felt was the major problem in his life at this time. The Defendant indicated, 'Women.' When asked what he has done or is willing to do to address this problem, he stated, 'Be single.'

[Defendant] was then asked how he felt about his present situation, to which he commented, 'Disappointed.' "

¶ 43    While the legislature prescribes possible sentences, a trial judge is given great discretion to determine an appropriate sentence within the limits set by the legislature. *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999). According to our supreme court:

> "The trial court must base its sentencing determination on the particular circumstances of each case, considering such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." *Fern*, 189 Ill. 2d at 53.

As the court indicated, defendant had a history of anger issues. Further, from the record, it does not appear defendant accepted that he needed to learn to control his temper so he would not batter anyone in the future. Instead, as the court recognized, defendant blamed "women" for his inability to control his anger. Under a community-based sentence, defendant would be exposed to women. In light of defendant's attitude toward women, as reflected in the record and his history of anger issues, the trial court did not abuse its discretion in sentencing defendant to prison based on its determination that a community-based sentence would be insufficient to deter defendant from committing more acts of domestic violence in the future, would deprecate the seriousness of defendant's actions, and would be inconsistent with the ends of justice.

¶ 44                                III. CONCLUSION

¶ 45    For the reasons stated, we affirm defendant's conviction and sentence in this case. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002(a) (West 2016).

¶ 46    Affirmed.