**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230161-U

Order filed November 21, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0161 Circuit No. 20-CF-469 |
| WILLIAM P. HEINTZ, | ) ) ) | Honorable Kathy S. Bradshaw-Elliott, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Brennan and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) Evidence of an altercation between defendant and the alleged victim postdating the charged offenses was admissible. (2) The trial court erred in precluding evidence defendant was acquitted of a previous battery. Vacated and remanded.

¶ 2    Defendant, William P. Heintz, appeals from his convictions for aggravated domestic battery, unlawful restraint, and domestic battery. He argues, in part, the trial court erred in (1) failing to admit evidence of the alleged victim's subsequent attacks on defendant and

(2) permitting evidence of a previous battery against the victim but not evidence defendant was acquitted of that charge. We vacate and remand.

¶ 3                                 I. BACKGROUND

¶ 4        Defendant was charged with attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a) (West 2020)), aggravated domestic battery (*id.* § 12-3.3(a-5)), unlawful restraint (*id.* § 10-3(a)), and domestic battery (*id.* § 12-3.2(a)(1)). The charges alleged that, on August 6, 2020, defendant stood on Brianne Szalaj's neck while running water over her face, strangled Szalaj, kept Szalaj from leaving the bathroom, and struck Szalaj about her body with his hands. Defendant claimed self-defense.

¶ 5        The State moved *in limine* to admit testimony of defendant's alleged previous domestic batteries. The court permitted evidence of four incidents, including a July 3, 2020, incident for which defendant was charged but later acquitted. Defendant moved *in limine* to introduce home surveillance videos of two incidents from November 5, 2020, and February 9, 2021, purporting to show Szalaj's violent character. Both videos were recorded on the same camera inside defendant's home. The footage from November 5, 2020, beginning at 1:15 a.m., showed Szalaj yelling at defendant before she splashed beer in his face, poured the rest of the beer on his head, and threw the empty can at his face.

¶ 6        The February 9, 2021, footage, beginning at 11:17 p.m., showed Szalaj strike defendant with her purse as he fell to the ground. Szalaj continued to strike defendant with her purse while he was on the ground. After a struggle, partially obscured by a chair in the foreground, Szalaj punched defendant twice in the head while he was still on the ground. Defendant then stood up and walked into another room. Szalaj began to follow defendant and appeared ready to punch him as they exited the camera's view. Out of view, defendant appeared to either push or hit Szalaj back.

2

After they argued for a brief period, Szalaj ripped the camera down. The court denied the motion, believing conduct by the victim postdating the charged offenses was inadmissible under *People v. Evans*, 2018 IL App (4th) 160686, ¶¶ 30-34.

¶ 7    During opening arguments at trial, defense counsel mentioned defendant was arrested and tried in Iroquois County for misdemeanor domestic battery. The court sustained the State's objection before defense counsel was able to state to the jury that defendant was acquitted of that charge.

¶ 8    Szalaj testified that on the night of August 5, 2020,[1] she arrived home to find defendant there, even though she did not expect to see him that night. Defendant had access to Szalaj's house because his vehicle was programmed to open her garage door. Defendant asked Szalaj for her cell phone, and she refused to give it to him. Defendant grabbed her face, ripping skin and causing bleeding. She ran into the bathroom, and defendant kicked down the door. Defendant threw Szalaj into the bathtub, stepped on her neck with his boot, and ran water over her face. Szalaj briefly blacked out during the incident. Defendant punched her in the face while she was in the bathtub. Defendant pulled out a knife and threatened to kill her. He continued to run water over her face and held her head with his hand. Defendant flipped the knife open. Szalaj told defendant, "just get it over with," and put her hand up. Defendant cut her thumb. Szalaj testified the abuse in the bathroom continued for hours.

¶ 9    At approximately 3:30 a.m., Szalaj went to her bedroom, opened her window, and cried out for help. Defendant told Szalaj they could discuss what happened later, and they fell asleep at approximately 4 a.m. Szalaj awoke at approximately 7 a.m., and defendant was still there. She

---

[1]While Szalaj initially indicated she came home the night of August 6, 2020, additional testimony indicates this was a misstatement, and the incident began on the night of August 5 and continued until the morning of August 6.

logged into her work computer and messaged a coworker to send the police to her home. When the police arrived, defendant was upstairs attempting to fix the bathroom door. Defendant fled. Photographs depicting Szalaj's injuries were introduced into evidence. Additional photographs were admitted into evidence showing the bathroom door, blood on Szalaj's pants, blood in the bathroom, and blood in the bathtub.

¶ 10 Six days later, Szalaj notified the police she found a knife under her bed. A photograph of the knife was admitted into evidence, as well as a photograph showing where it was discovered. Szalaj testified she did not touch the knife.

¶ 11 After August 6, 2020, Szalaj and defendant continued to have contact "off and on." Defendant primarily initiated the contact and Szalaj initiated contact at times, despite having an order of protection against defendant. Szalaj also stayed overnight at defendant's house. Defendant mostly contacted Szalaj when a trial date was approaching to say she needed to work with him on the trial, and that if she did not, "it would take a toll on [her] kids."

¶ 12 Per the ruling *in limine*, Szalaj discussed the four prior incidents wherein defendant struck her in the head with a gun, stood over her while striking her multiple times about her body, broke her cell phone before screaming at her, and put his knees on her chest and face. On July 3, 2020, defendant slammed her face into the ground after forcing her from his home. Outside the presence of the jury, defense counsel stated they intended to introduce evidence of defendant's previous acquittal related to the events of July 3, 2020, through cross-examination. The court prohibited the introduction of this evidence because "the cases all read it doesn't mean that he's innocent. It just means that he was found not guilty."

¶ 13 A registered emergency room nurse testified she treated Szalaj on August 12, 2020. Szalaj told the nurse she was involved in a domestic dispute where she was grabbed by the lip and started

4

bleeding. Szalaj reported losing consciousness. Szalaj informed the nurse the bathroom door was kicked down, and she was punched and kicked. The nurse noted bruising under Szalaj's eye.

¶ 14    A Bourbonnais police officer testified he responded to a welfare request on August 6, 2020. When he arrived, Szalaj came running outside asking for help. As the officer was talking with Szalaj, he heard the back door slam. Szalaj stated it was defendant running out the back door. Szalaj had a black eye. The officer took photographs of Szalaj's injuries, which were admitted into evidence. Defendant was arrested later that day following a traffic stop. An officer observed red stains on the upper part of defendant's T-shirt and button-up shirt. Officers were unable to locate the knife at the time, but it was later recovered. A forensic scientist testified a bloodstain on the handle of the knife contained Szalaj and defendant's DNA. No blood was recovered from the blade of the knife. The State rested.

¶ 15    A friend of defendant testified that in February 2019, he saw Szalaj approach defendant from behind and "crack[ ] him in the back of the head." Defense counsel again raised the issue of introducing evidence of the not-guilty verdict from Iroquois County. The court maintained its earlier ruling.

¶ 16    Defendant testified he began a relationship with Szalaj in 2016. The night of the incident, he and Szalaj had planned to meet. She text messaged him when she was driving home. As they were talking at Szalaj's house, Szalaj threw a beer can at defendant's head. She ran to the bathroom and slammed the door. Defendant "bumped" into the door, and the "doorjamb popped." Szalaj became violent when defendant entered the bathroom—punching and kneeing defendant. Szalaj fell backwards into the bathtub while defendant was trying to restrain her. Defendant put his knee on Szalaj's chest to protect himself. He denied putting his foot or knee on her neck. Szalaj eventually agreed to stop fighting, and they went to bed and fell asleep. Szalaj never opened the

5

window to scream for help. When they awoke, defendant saw Szalaj had injuries. Defendant was injured as well but the police did not take photographs of his injuries. Defendant testified a photograph of Szalaj following this incident included old and new injuries, including from July 3.

¶ 17 Defendant denied battering Szalaj before the subject incident. As to the July 3, 2020, incident, he testified he was driving home when Szalaj slapped him. When they arrived at defendant's home, he ran inside and locked the door. Szalaj entered the home through the basement. They began to argue. As defendant attempted to walk away, Szalaj shoved him into a gun cabinet. Defendant attempted to physically remove Szalaj from his house. Szalaj continued fighting defendant before they tripped over a door threshold. The jury was not informed defendant was acquitted of charges stemming from this incident. Defendant further alleged Szalaj threw a beer can at his head in February 2019, struck him in the back of the head while he was talking to a bartender, and "sucker punched" him while he was driving in March 2019, resulting in a black eye.

¶ 18 The jury found defendant guilty of aggravated domestic battery, unlawful restraint, and domestic battery. It acquitted him of attempted first degree murder. Defendant filed a posttrial motion. Relevant to this appeal, defendant argued the court erred in precluding evidence of the incidents postdating the charged offenses and in denying the admission of defendant's previous acquittal. The court denied the motion and sentenced defendant to three years' imprisonment. This appeal followed.

¶ 19                                                    II. ANALYSIS

¶ 20 On appeal, defendant argues, in part, the trial court erred by barring (1) evidence of instances of Szalaj's violent conduct which postdated the charged offenses and (2) admission of his acquittal of domestic battery in Iroquois County. We consider each argument in turn.

6

¶ 21                 A. Alleged Victim's Conduct Postdating Charged Offenses

¶ 22        Illinois Rule of Evidence 405(b)(2) (eff. Jan 1, 2011) states, "In criminal homicide or battery cases when the accused raises the theory of self-defense and there is conflicting evidence as to whether the alleged victim was the aggressor, proof may also be made of specific instances of the alleged victim's prior violent conduct." Rule 405(b)(2) codified existing Illinois common law, as set forth in *People v. Lynch*, 104 Ill. 2d 194, 200 (1984); see also Ill. R. Evid. Committee Commentary (adopted Jan. 1, 2011). Even though propensity evidence is generally disfavored, the alleged victim's violent history may be admissible either (1) to explain defendant's perception of the victim at the time of the incident or (2) the alleged victim's propensity for violence tends to support defendant's version of the facts. *Lynch*, 104 Ill. 2d at 200. As the two recorded incidents postdate the charged offenses in the instance case, we need only consider the second scenario.

¶ 23        Under the second basis, when there is a question as to whether the alleged victim was the aggressor, "evidence as to what occurred is often incomplete and conflicting." *People v. Yeoman*, 2016 IL App (3d) 140324, ¶ 29. The jury therefore may need all the available facts, including evidence of the alleged victim's aggressive and violent character. *Id.* Evidence of defendant's propensity for violence is generally inadmissible not because it is irrelevant, but because it is unfairly prejudicial. *Lynch*, 104 Ill. 2d at 201. Evidence of the alleged victim's propensity for violence in a self-defense case, however, carries the same relevance but sheds the risk of unfairly prejudicing defendant. *Id.*

¶ 24        Initially, the videos of the incidents postdating the charged offenses show Szalaj committing battery against defendant.[2] Battery is generally considered "*prima facie* probative

---

[2]Throwing liquid on another individual in an insulting or provoking nature constitutes battery. See *People v. Walker*, 291 Ill. App. 3d 597, 604 (1997).

enough of aggressive and violent tendencies to be admissible" under Rule 405. *Id.* at 203. At trial, Szalaj and defendant provided conflicting accounts of the events of August 5 and 6, 2020. Because the testimony and other evidence created a question of who was the aggressor, Szalaj's alleged batteries of defendant were relevant and admissible to aid the jury in resolving this question. Even so, the issue remains whether this evidence was admissible given the alleged incidents took place *after* the charged conduct.

¶ 25   The First District recently addressed this issue in *People v. Degrave*, 2023 IL App (1st) 192479, ¶ 50. There, the victim testified at a bench trial that the defendant assaulted her following an argument, resulting in a broken nose. *Id.* ¶ 15. Photographs of the victim's injuries and medical testimony that her nose was broken were admitted into evidence. *Id.* ¶ 22. The victim also testified as to four other times the defendant had been violent to her. *Id.* ¶¶ 26-30. The defendant testified the victim had jumped on his back and pulled at his shirt following an argument, causing him to struggle to breathe and throw his right elbow back to get her off his back. *Id.* ¶ 37. The defendant sought to admit evidence of four incidents to support his argument that the victim was the initial aggressor, and that he was defending himself. *Id.* ¶ 41. The court allowed defendant to testify about three incidents, all predating the charged offense (*id.* ¶ 42) but barred him from testifying about the fourth incident, which postdated the charged offense. *Id.* ¶ 46.

¶ 26   The First District held it was error to preclude evidence of the incident postdating the charged offense. *Id.* ¶ 99. The court determined Rule 405 permits evidence of specific instances of the alleged victim's prior conduct, "regardless of whether those specific instances occurred before or after the incident in question." *Id.* ¶ 87. The court noted that nothing in *Lynch* suggests the incidents at issue must predate the charged offense and there would be no reason for such a limitation given it is propensity evidence. *Id.* ¶ 81. Whether the incident occurred before or after

8

the charged offense does not affect whether evidence of the incident tends to prove the alleged victim's violent character. See *id.* The court noted other-crimes evidence is admissible to prove defendant's propensity to commit the charged crime, regardless of whether the other acts occurred before or after the charged offense. *Id.* ¶ 87. The court therefore opined it was "all but impossible to believe that the supreme court, in adopting Rule 405(b)(2), intended to give *less* rights to criminal defendants to present their case than the State would receive in the very same [situation]." (Emphasis in original.) *Id.* ¶ 86. Stated another way, just as the State can introduce evidence of a defendant's conduct after the charged offense, so too should a defendant be able to introduce evidence of a victim's conduct after the charged offense to show propensity. We agree and adopt the reasoning of *Degrave.* Therefore, we find that the court erred in precluding the evidence of instances of Szalaj's violent conduct postdating the charged offenses.

¶ 27　　　　In coming to this conclusion, we note that the Fourth District has reached the opposite conclusion in *Evans*, 2018 IL App (4th) 160686, ¶¶ 30-34, which the *Degrave* court declined to follow. As we agree with the analysis in *Degrave*, we likewise decline to follow *Evans*. See *Degrave*, 2023 IL App (1st) 192479, ¶¶ 64-67.

¶ 28　　　　Moreover, we cannot find the error was harmless. An evidentiary error is harmless if (1) the evidence overwhelmingly supports the conviction, (2) there is no reasonable probability the error contributed to the verdict, or (3) the error concerns evidence which is only cumulative of other evidence properly presented at trial. *People v. Sanders*, 2021 IL App (5th) 180339, ¶ 67. Here, the evidence was not overwhelming where it largely concerned a credibility contest between defendant and Szalaj and their mutual acts of domestic violence. While there may have been sufficient evidence presented to support defendant's convictions, "that is not the same thing as overwhelming evidence." (Internal quotation marks omitted.) *People v. Rosado*, 2017 IL App (1st) 143741, ¶ 41.

9

Given the lack of overwhelming evidence, additional evidence of Szalaj's violent character, particularly video evidence, may have impacted the outcome. The evidence was also not cumulative despite the testimony of previous incidents of violence committed by the alleged victim. See, *e.g.*, *Degrave*, 2023 IL App (1st) 192479, ¶ 89 (evidence of an incident postdating the charged offense was not cumulative despite introduction of evidence of three prior acts of violence committed by the alleged victim). Szalaj's other alleged acts of violence predating the charged offense were presented through the testimony of defendant and defendant's friend and did not share significant factual similarity with the charged offenses, unlike the recorded incidents.

¶ 29    We therefore vacate defendant's convictions and remand for a new trial. On remand, the court is instructed to permit evidence of the November 2020 and February 2021 incidents.

¶ 30                    B. Evidence of Acquittal

¶ 31    Despite our ruling, we find it necessary to consider defendant's argument regarding the trial court's bar of the evidence of defendant's acquittal because it is likely to recur on remand. See *Pielet v. Pielet*, 2012 IL 112064, ¶ 56. The trial court is charged with determining what evidence is relevant and admissible. *People v. Garcia*, 2012 IL App (2d) 100656, ¶ 17. We review a court's decision to admit or bar evidence for an abuse of discretion. *Id.* An abuse of discretion occurs when the court's ruling is unreasonable. *People v. Ward*, 2011 IL 108690, ¶ 21.

¶ 32    Evidence of offenses other than those at issue is generally inadmissible in order to "protect against the jury convicting a defendant because he or she is a bad person deserving punishment." *People v. Donoho*, 204 Ill. 2d 159, 170 (2003). "Such evidence is not considered irrelevant; instead, it is objectionable because such evidence has too much probative value." (Internal quotation marks omitted.) *Id.* "Defendant is entitled to have his guilt or innocence evaluated solely on the basis of the charged crime." *Id.* To admit evidence of a separate offense, the State is not

required to prove defendant's guilt of that offense beyond a reasonable doubt, but instead, must only show "more than a mere suspicion." *People v. Davis*, 248 Ill. App. 3d 886, 893 (1993). Therefore, even if defendant is acquitted of the other crime, evidence of that crime may still be admissible at a subsequent trial. *People v. Baldwin*, 2014 IL App (1st) 121725, ¶ 73.

¶ 33      The function of a jury is "to assess the credibility of witnesses, weigh the evidence presented, resolve conflicts in the evidence, and draw reasonable inferences from the evidence." (Internal quotation marks omitted.) *Ward*, 2011 IL 108690, ¶ 34. To perform this function, the jury should be given "as much relevant, admissible evidence as possible." *Id.* "Due to the inherently high, and often overly persuasive, probative value of such propensity evidence, the need to avoid unfair prejudice by providing a full context for the other-crimes testimony is readily apparent." *Id.* ¶ 46. Barring evidence of an acquittal only "further enhance[s] the already high danger of undue prejudice." *Id.* Therefore, generally, the court abuses its discretion where it permits evidence of a separate offense while precluding evidence of the previous acquittal. *Id.* ¶ 48; *Rosado*, 2017 IL App (1st) 143741, ¶ 36; *People v. Bedoya*, 325 Ill. App. 3d 926, 943 (2001).

¶ 34      Here, the trial court abused its discretion when it precluded evidence of defendant's acquittal. Permitting evidence of the July 3, 2020, incident, without allowing evidence of defendant's acquittal, carried a serious "risk of misleading or overpersuading the jury" and "[f]airness required disclosure." *Bedoya*, 325 Ill. App. 3d at 943. The risk was particularly present here given the extent of evidence introduced regarding the July 3 incident, proximity in time to the charged offenses, and factual similarities between the two incidents. Further, some of Szalaj's injuries depicted in the photographs following the charged offenses may have been the result of the July 3 incident, only amplifying the risk the jury would find defendant guilty for improper reasons.

11

¶ 35       While defendant makes no argument regarding the sufficiency of the evidence, we must determine whether double jeopardy prohibits defendant's retrial. The double jeopardy clause prohibits a second, or successive, trial for the same offense after an acquittal. *People v. Filipiak*, 2023 IL App (3d) 220024, ¶ 20. Therefore, defendant may not be retried for the attempted first degree murder charge for which he was acquitted.

¶ 36       However, the double jeopardy cause does not prohibit retrial where the evidence, including improperly admitted evidence, was sufficient to sustain the conviction. *People v. Drake*, 2019 IL 123734, ¶ 21. We review the evidence in the light most favorable to the prosecution and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original and internal quotation marks omitted.) *Id.* Taken together, to prove aggravated domestic battery and domestic battery, the State was required to prove defendant knowingly caused great bodily harm to a family or household member without legal justification. 720 ILCS 5/12-3.3(a-5), 12-3.2(a)(1) (West 2020).

¶ 37       Here, Szalaj and defendant were in a relationship. Szalaj testified defendant began attacking her in the bathroom for no justifiable reason. The incident resulted in Szalaj sustaining a black eye and other injuries, which was sufficient to show great bodily harm. See, *e.g.*, *People v. Kinnerson*, 2020 IL App (4th) 170650, ¶¶ 71-74. To prove unlawful restraint, the State was required to prove defendant unlawfully restrained another without legal justification. 720 ILCS 5/10-3(a) (West 2020). Szalaj testified defendant restrained her in the bathroom for hours, which was sufficient to prove unlawful restraint. Because the evidence was sufficient to sustain defendant's convictions for aggravated domestic battery, unlawful restraint, and domestic battery, the double jeopardy clause does not prohibit retrial as to these charges.

¶ 38                                    III. CONCLUSION

¶ 39    For the foregoing reasons, we vacate the judgment of the circuit court of Kankakee County and remand for further proceedings.

¶ 40    Vacated and remanded.