**2026 IL 131340**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 131340)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
WILLIAM P. HEINTZ, Appellee.

*Opinion filed January 28, 2026.*

JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Overstreet, Holder White, and Rochford concurred in the judgment and opinion.

Justice O'Brien specially concurred, with opinion, joined by Chief Justice Neville and Justice Cunningham.

**OPINION**

¶ 1     At issue in this appeal is whether evidence of Brianne Szalaj's alleged violent conduct that postdated the charged offenses against defendant, William Heintz, was admissible under Illinois Rule of Evidence 405(b)(2) (eff. Jan. 1, 2011).

Additionally, we must consider whether the Kankakee County circuit court abused its discretion in barring evidence that defendant was acquitted of one of the four prior alleged acts of domestic violence against Szalaj, which was introduced by the State at trial. The appellate court vacated defendant's convictions and remanded for a new trial. 2024 IL App (3d) 230161-U, ¶ 39. For the reasons that follow, we reverse the appellate court's judgment and remand to the appellate court to consider defendant's remaining claims.

¶ 2                                    BACKGROUND

¶ 3        Defendant was charged in connection with his conduct toward Szalaj on August 6, 2020, with attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a) West 2020)), aggravated domestic battery (*id.* § 12-3.3(a-5)), unlawful restraint (*id.* § 10-3(a)), and domestic battery (*id.* § 12-3.2(a)(1)).

¶ 4        Prior to trial, the State and defendant both sought leave to introduce evidence of other acts of violent conduct committed during defendant's multiyear relationship with Szalaj.

¶ 5        The State filed a motion *in limine*, pursuant to section 115-7.4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.4 (West 2020)). That statute applies in domestic violence cases and allows the admission of "evidence of the defendant's commission of another offense or offenses of domestic violence," which can be considered for any relevant purpose. See *id.* § 115-7.4(a). The State sought to admit testimony detailing defendant's previous alleged acts of domestic battery. The trial court granted the State's motion and allowed evidence of four separate incidents that all occurred prior to the charged offenses in this case. The first incident occurred in February 2019, the second in July 2019, the third in February 2020, and the fourth on July 3, 2020. In the fourth incident, defendant was charged with domestic battery and was later acquitted of the charge.

¶ 6        Defendant also filed a motion *in limine* to introduce home surveillance videos showing two separate incidents to illustrate the alleged violent character of Szalaj. One set of videos was taken on November 5, 2020, three months after the charged offenses in this case, and showed Szalaj throwing a beer can at defendant's face. The second set of videos was taken on February 9, 2021, and showed Szalaj

straddling defendant's body, hitting him with her purse and punching him. The trial court denied defendant's motion *in limine* because the conduct recorded in the videos postdated the charged offenses.

¶ 7 A jury trial commenced on December 12, 2022. During opening arguments, defense counsel stated, *inter alia*, that Szalaj had defendant arrested for misdemeanor domestic battery in relation to an incident on July 3, 2020, and that he was tried on the offense in Iroquois County. The court sustained the State's objection.

¶ 8 The evidence established that Szalaj and defendant began a relationship after meeting at work around 2017. The two maintained separate residences. Defendant lived in Iroquois County, and Szalaj lived in Kankakee County. Over the course of their relationship, they began to fight, accusing each other of infidelity. The couple would repeatedly break up and then reconcile.

¶ 9 Szalaj testified that on August 5, 2020, she returned to her home after 10 p.m. to find defendant waiting for her in the kitchen. He demanded her cell phone, and when she refused, he grabbed her upper lip, causing it to bleed. She fled upstairs to the bathroom and locked the door. Defendant then kicked the door down, threw her into the bathtub, stepped on her neck and chest, and began to run water over her face. Defendant had her cell phone and repeatedly told her that, if she would give him the password, he would stop. Defendant became more forceful and stepped on her neck again. Szalaj could not breathe and blacked out.

¶ 10 Szalaj further testified that, when she regained consciousness, defendant was beating her and punching her in the face. He held her head under the running water and demanded her password. Defendant pulled out a knife and threatened to kill her. Szalaj raised her hand, and defendant cut her thumb. She testified that she was held in the bathroom for hours. Eventually, defendant let her out of the bathroom, and she went to sleep. She further testified that she had screamed for help out of her bedroom window. Defendant told her they would discuss it later and instructed her to go to bed. When she woke up in the morning, defendant was still there. Szalaj was able to log on to her work computer and send a message to a coworker to send the police. When the police arrived, defendant fled out the garage door.

¶ 11        Szalaj's blood was found on defendant's shirt, and her phone was in defendant's car. Police took photographs of her injuries, including a black eye, a bleeding lip, marks on her chest, a cut on her thumb, and bruises all over her body. The police photographed the bathroom door and the blood in the bathtub. After the attack, Szalaj found the knife under her bed. DNA from both Szalaj and defendant was found on the knife.

¶ 12        Defendant advanced a claim of self-defense. He testified that the two were still in a relationship in August 2020 and were planning to meet at Szalaj's home on the evening of August 5. When he arrived there after midnight, she was sleeping, and he woke her. He questioned Szalaj and asked to see her cell phone because her answers were evasive. Defendant testified that he grabbed her cell phone, saw that she had changed her password, and asked why. Szalaj then grabbed defendant's cell phone, threw a beer in his face, and fled to the bathroom with his phone. Defendant chased her, he used his body to "hit [the door] with some force," and the doorjamb "popped." After he forced the door open, Szalaj began to punch him and tried to knee him in the groin. He grabbed her arms to protect himself, and she fell into the tub during the struggle. He testified that he pinned her in the tub with his boot. When he let her up, she began punching him again. The two fell back into the tub, and he put his boot on her chest to restrain her until she settled down. Defendant denied that he slapped, kneed, or kicked Szalaj or stepped on her neck. Eventually she stopped fighting, and they went to bed.

¶ 13        Defendant called Jeff Wedwick without objection by the State. He testified that he was a longtime friend of defendant's father. Wedwick testified that he and his wife went on a trip to Mexico with defendant and Szalaj in February 2019. During the trip, he observed Szalaj approach defendant from behind at a bar and said she "cracked him in the back of the head."

¶ 14        Consistent with the trial court's ruling on the motion *in limine*, Szalaj and defendant both testified about four other occasions of domestic violence that all occurred prior to the charged offenses in this case. The first incident occurred in February 2019. Szalaj testified that she and defendant were at his home. They were arguing after she confronted him about e-mail messages between him and an ex-girlfriend. Defendant pointed a gun at her and then beat her in the back of the head

with it. Defendant testified that she started the argument and threw a drink in his face and that he did not touch her.

¶ 15 The second incident occurred in July 2019. She testified that defendant hit her multiple times "all over [her] body" because she would not give him access to her phone. He pointed a gun at her and threatened to kill her but later apologized and blamed her for escalating the dispute. He stated that it would not have happened if she had just given him her phone. Defendant admitted at trial that they argued during the July 2019 incident, but he denied hitting her or pointing a gun at her.

¶ 16 The third incident occurred in February 2020. Szalaj testified that defendant destroyed her cell phone when she refused to give him her password. She tried to take money from defendant's wallet to pay for the phone, and defendant attacked her, threw her to the ground, pushed her face into the floor, and pinned her body with his knees, breaking her ribs. Defendant denied shattering her cell phone or attacking her in February 2020.

¶ 17 The fourth incident occurred on July 3, 2020, and is central to the first issue on appeal. Szalaj testified that the two argued as they drove to defendant's home after a party. The argument continued inside defendant's home until he pushed Szalaj out and locked the door. Szalaj testified that her dog, cell phone, and work items remained in the house. She reentered the home through a basement window and confronted defendant. Szalaj testified that defendant pushed her down a hallway and the two fell down the stairs into a gun cabinet, which shattered. He then pushed her outside and slammed her face into the ground. She called 911 using her car's emergency assistance function. Following the incident, Szalaj had bruises all over her body. When asked about the nature of her relationship with defendant after July 3, 2020, she responded, "Didn't really have a relationship. There was the *** communication in regards to the Iroquois County case." Later, in identifying a certain photo admitted into evidence, Szalaj testified that she had previously seen it during the trial in Iroquois County.

¶ 18 Defendant testified that on July 3, 2020, he tried to physically remove Szalaj from his home after he had locked the door and she entered through a window. He testified that she fought him and, while trying to remove her, the two tripped at the front threshold and he fell on top of her. Defendant was permitted to present three

videos taken on July 3, 2020, by his motion-activated doorbell camera. None of the three selected videos showed defendant pushing Szalaj out the door.

¶ 19    Outside the presence of the jury, defense counsel sought leave to introduce evidence of defendant's acquittal of the criminal charges arising from the July 3, 2020, incident. The trial court denied defendant's request and ruled the evidence of the acquittal of domestic battery in Iroquois County was not admissible because a jury finding defendant not guilty did not mean that he was innocent of the charge. The trial court offered to reconsider the issue if counsel could find a case holding such evidence admissible. Defendant did not revisit the issue during the trial.

¶ 20    The jury found defendant guilty of aggravated domestic battery, unlawful restraint, and domestic battery and acquitted him of attempted first degree murder. He was sentenced to three years in prison.

¶ 21    Defendant filed a posttrial motion and argued, in pertinent part, that the trial court erred in precluding evidence of the two incidents that occurred after the charged offenses. He also challenged the denial of his request to admit evidence of his acquittal of the criminal charges arising from his conduct on July 3, citing *People v. Ward*, 2011 IL 108690, for support. The trial court denied his posttrial motion. Concerning the latter issue, the trial court found *Ward* distinguishable and stated, *inter alia*:

> "I think about the different methods used in two different counties to try a case as to why one case might be an acquittal, and one case might be a guilty. So, *** I still believe my ruling was right *** and knowing from both sides that the case in Iroquois County was—it included the same defendant and the same victim. But their rules of evidence [in Iroquois County] are very different for whatever reason because of that state's attorney and it did not involve a 7.4 or a 7.20 [matter]."

¶ 22    On appeal, defendant argued that the trial court erred by barring evidence of Szalaj's violent conduct after the charged offenses as well as evidence of his acquittal of domestic battery. The appellate court held that Rule 405 permits evidence of specific instances of the victim's prior conduct regardless of whether those specific instances occurred before or after the incident in question. 2024 IL App (3d) 230161-U, ¶ 26. The court found the error was not harmless, determining

that this case came down to credibility and that the evidence was not overwhelming. *Id.* ¶ 28.

¶ 23    In addition, for completeness on remand, the appellate court held it was an abuse of discretion for the trial court to deny defendant's request to admit evidence of his acquittal following the July 3 incident. *Id.* ¶ 34. The appellate court determined that the denial enhanced the undue prejudice already found generally in propensity evidence. *Id.* ¶¶ 33-34. The failure to admit the evidence had the increased risk of misleading or overpersuading the jury. *Id.* ¶ 34. The appellate court therefore reversed and remanded for a new trial and did not consider defendant's remaining claims. *Id.* ¶ 39.

¶ 24    This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023).

¶ 25                                                    ANALYSIS

¶ 26    We first address whether the trial court properly barred evidence of Szalaj's alleged violent conduct that postdated the charged offenses. The State contends that the trial court adhered to the plain language of Illinois Rule of Evidence 405(b)(2) (eff. Jan. 1, 2011) and that the appellate court erred in holding that under the rule the timing of Szalaj's alleged violent conduct was irrelevant to show her propensity for aggression.

¶ 27    In addressing this issue, we must interpret Rule 405, and in doing so we apply the same principles that govern statutory construction. *People v. Gorss*, 2022 IL 126464, ¶ 10. "Our goal is to ascertain and give effect to the intention of the drafters," and "[t]he most reliable indicator of that intent is the language used, which should be given its plain and ordinary meaning." *People v. Deroo*, 2022 IL 126120, ¶ 19. Where the plain language of a rule is clear and unambiguous, we must apply the language used without further aids of construction. *Id.* The interpretation of a rule of this court is a question of law that we review *de novo*. *Id.*

¶ 28    Generally, evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion. See Ill. R. Evid. 404(a) (eff. Jan. 1, 2011). The rule bars such character

evidence except in certain limited circumstances including "a pertinent trait of character of the alleged victim of the crime offered by an accused." Ill. R. Evid. 404(a)(2) (eff. Jan. 1, 2011). This court has previously recognized that evidence of a victim's aggressive and violent character may tend to support a theory of self-defense in two ways: (1) the defendant's knowledge of the victim's violent tendencies necessarily affects the defendant's perceptions of and reactions to the victim's behavior, and (2) evidence of the victim's propensity for violence tends to support the defendant's version of the facts where there are conflicting accounts of what happened. *People v. Lynch*, 104 Ill. 2d 194, 199-200 (1984).

¶ 29        In cases where Rule 404 permits the admission of character evidence, Rule 405 limits the means by which a party may use and present such evidence. *People v. Smart*, 2025 IL 130127, ¶ 45. Specifically, Rule 405(b)(2) provides:

>    "In criminal homicide or battery cases when the accused raises the theory of self-defense and there is conflicting evidence as to whether the alleged victim was the aggressor, proof may also be made of specific instances of the alleged victim's prior violent conduct." Ill. R. Evid. 405(b)(2) (eff. Jan. 1, 2011).

¶ 30        The State maintains that the appellate court did not adhere to the plain language of the rule, instead finding that, logically, the timing of the violent conduct was irrelevant to show the victim's propensity for aggression. Instead, the court mistakenly relied on *People v. Degrave*, 2023 IL App (1st) 192479, to find that subsequent violent acts that postdate the charged offense were admissible. Defendant argues, consistent with *Degrave*, that Rule 405(b)(2) should not be read to create a temporal limitation on the admissibility of the evidence of the alleged victim's conduct.

¶ 31        In *Degrave*, the trial court allowed the defendant to testify about three incidents, all predating the charged offense for domestic battery, but barred evidence, including a video, concerning a fourth incident involving the defendant and the alleged victim, which postdated the offense. *Id.* ¶¶ 42, 50. The appellate court held that, although Rule 405(b)(2) refers to "prior violent conduct," the term "prior" should not be read to confine admissible acts to only those occurring before the charged incident. *Id.* ¶¶ 81, 87. The court reasoned that one's character is revealed by actions, regardless of timing, and that a temporal restriction would be inconsistent with this court's rationale in *Lynch* and with the rights of a defendant

in self-defense cases. *Id.* ¶¶ 79-80. The court found even acts that postdated the charged incident may therefore be admissible when there is a genuine factual dispute about who initiated the violence. *Id.* ¶ 81. The court reasoned that whether the incident occurred before or after the charged offense does not affect whether evidence of the incident tends to prove the alleged victim's violent character. *Id.* In reversing and remanding for a new trial, the *Degrave* court found that it was plain error to exclude the evidence because it was especially probative and the case was closely balanced. *Id.* ¶¶ 95, 99.

¶ 32    In contrast, in *People v. Evans*, 2018 IL App (4th) 160686, ¶ 26, the defendant argued that the trial court improperly restricted his ability to fully present his self-defense case by prohibiting him from introducing evidence relating to the victim's combative behavior that occurred after the charged domestic battery offense. The defendant claimed that he should have been allowed to introduce evidence of a pending case against the victim where she was charged with damaging defendant's siding and vehicle. *Id.* Defendant also claimed the court erred in denying his request to use a " 'phone video' " purportedly showing the victim pouring liquid on the defendant and setting fire to his beard with a cigarette. *Id.* The trial court held that he could not introduce evidence of the victim's actions that occurred after the charged incident. *Id.* ¶ 6. The court held that, for purposes of asserting self-defense, information showing a victim's aggressive and violent character is relevant to show who was the aggressor and that the defendant may show it by appropriate evidence, regardless of when he learns it. *Id.* ¶ 30. The court found, however, also relying on the rationale of *Lynch*, that information unknown to a defendant at the time of the incident could not have impacted the defendant's perceptions of the victim's actions. *Id.* The *Evans* court concluded that, regardless of forfeiture, the defendant had not established the trial court abused its discretion in not allowing evidence of the victim's alleged actions that occurred after the charged incident. *Id.* ¶ 34.

¶ 33    Turning to the proper construction of Rule 405(b)(2), the language explicitly limits the evidence to "instances of the alleged victim's *prior* violent conduct." (Emphasis added.) Ill. R. Evid. 405(b)(2) (eff. Jan. 1, 2011). The word "prior" is defined as "earlier in time or order." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/prior (last visited Jan. 7, 2026), [https://perma.cc/4DUQ-WW39]. As the State contends, the rule cannot be reasonably read to mean prior to trial, as the appellate court found, because all trial evidence is

necessarily limited to evidence that existed prior to trial. To interpret the rule to allow evidence of the victim's conduct at any point before a trial began would render the word "prior" superfluous and conflict with the basic principles of statutory construction. See *Schultz v. St. Clair County*, 2022 IL 126856, ¶ 27 ("An established principle of statutory interpretation provides that every clause of a statute must be given a reasonable meaning, if possible, and should not be rendered meaningless or superfluous."). We find the plain language of the rule bars evidence of the victim's propensity for violence that occurred after the charged offense.

¶ 34        Additionally, enforcing Rule 405(b)(2)'s plain language does not conflict with *Lynch*, which predated the adoption of the Illinois Rules of Evidence, and where this court did not consider or speak on any conduct that occurred after the crime. On the contrary, in *Lynch*, this court found that the victim's three convictions for battery were admissible to show the victim's propensity for violence, and to support the defendant's contention that the victim was the aggressor, but that all of the conduct at issue occurred prior to the charged offense. *Lynch*, 104 Ill. 2d 199-201. We agree with the State that enforcing the rule's plain language does not lead to an absurd result. Such a limitation potentially acknowledges that a victim's conduct after a violent attack may be a result of the trauma of the attack itself and not a preexisting predisposition to violence. This could be especially true in a case where the victim's conduct after the charged offense is directed at the victim's attacker.

¶ 35        Consequently, we hold the trial court properly found evidence of Szalaj's conduct after the charged offenses was inadmissible and barred it. To the extent that *Degrave* is inconsistent with our holding today, it is overruled.

¶ 36        We next turn to the State's contention that the trial court did not abuse its discretion in failing to allow defendant to introduce evidence of his acquittal of the charges surrounding his conduct on July 3, 2020. The State argues that the evidence of his acquittal was irrelevant to whether he attacked Szalaj on July 3, 2020, or unnecessary to cure any undue prejudice resulting from the State's evidence.

¶ 37        This court reviews the trial court's ruling on the admission of acquittal evidence for an abuse of discretion. *Ward*, 2011 IL 108690, ¶ 21. An abuse of discretion occurs when the ruling is arbitrary, fanciful, or unreasonable or when no reasonable person would adopt the trial court's view. *Id.* (citing *People v. Illgen*, 145 Ill. 2d 353, 364 (1991)).

¶ 38    As this court has long recognized, evidence relating to a defendant's propensity to commit crimes has generally been excluded from criminal trials because it tends to be overly persuasive to a jury, who may " 'convict the defendant only because it feels he or she is a bad person deserving punishment.' " *Id.* ¶ 24 (quoting *People v. Lindgren*, 79 Ill. 2d 129, 137 (1980)). Our legislature, however, has chosen to provide limited exceptions to this general rule of inadmissibility for other-crimes evidence to show, pertinent to this appeal, a defendant's propensity to commit offenses of domestic violence. See 725 ILCS 5/115-7.4 (West 2020). Such evidence may be considered for its bearing on any relevant matter. See *id.* § 115-7.4(a). Section 7.4(b) provides that, before evidence of the defendant's commission of another offense or offenses of domestic violence may be admitted, the court applies a test, weighing the probative value of the evidence against undue prejudice to the defendant. See *id.* § 115-7.4(b). Section 7.4(b) lists three factors the court may consider in weighing the probative value of the evidence against undue prejudice: specifically, the proximity in time between the two alleged acts of domestic violence, the factual similarity between the acts, or other relevant facts and circumstances. *Id.*

¶ 39    In *Ward*, the defendant was convicted of the criminal sexual assault of M.M. after raising the defense of consent at trial. *Ward*, 2011 IL 108690, ¶¶ 2, 16. Prior to trial, the court had granted the State's motion and allowed the State to admit evidence, pursuant to section 115-7.3(c) of the Code (725 ILCS 5/115-7.3(c) (West 2002)), that the defendant had also been involved in the criminal sexual assault of another woman, L.S., to show that he had a propensity to commit sex crimes. *Ward*, 2011 IL 108690, ¶ 8. The trial court, however, denied the defendant's request to admit evidence of his acquittal in L.S.'s case. *Id.* ¶ 1. During L.S.'s testimony, a reference to her prior testimony was made during cross-examination by defense counsel. *Id.* ¶ 14. He made another brief reference to the prior testimony during closing arguments. *Id.*

¶ 40    On appeal to this court, the defendant argued that the trial court erred because its refusal to admit evidence that he had been acquitted of sexually assaulting L.S. unfairly prejudiced his defense. *Id.* ¶ 21. The State asserted that the trial court's refusal to admit the acquittal evidence was proper because the prior verdict had been based on different evidence and "could simply be attributable to more adroit 'lawyering.' " *Id.* ¶ 22.

¶ 41　　　In finding that the trial court's preclusion of the acquittal evidence was an abuse of discretion, this court conducted a balancing test under which we weighed the probative value of admitting the acquittal evidence against the undue prejudice to the defendant if the other-crimes evidence were admitted without the admission of the acquittal evidence. *Id.* ¶ 35.

¶ 42　　　With respect to the probative value of the acquittal evidence, this court held that,

> "[w]ithout the benefit of even the general knowledge that defendant was acquitted of assaulting L.S., the jury could easily have been swayed after hearing only parts of the story. Here, the probative value of the acquittal evidence is in its ability to provide the jury with a more complete context for L.S.'s testimony. While the M.M. jury still had an independent duty to determine the credibility of her testimony and evaluate its weight, the acquittal evidence would have provided another part of the picture that was otherwise sorely absent." *Id.* ¶ 40.

¶ 43　　　In addressing the potential for unfair prejudice to the defendant if the other-crimes evidence were admitted without the admission of the acquittal evidence, this court reiterated that "[p]rejudice means 'an undue tendency to suggest decision on an improper basis, commonly an emotional one, such as sympathy, hatred, contempt, or horror.' " *Id.* ¶ 41 (quoting *People v. Lewis*, 165 Ill. 2d 305, 329 (1995), quoting Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 403.1 (4th ed. 1984)). We held that, under this court's definition in *Lewis*, the prejudicial impact of not informing the jury about the defendant's acquittal in the L.S. case was obvious. *Id.* ¶ 44. "A jury would have likely reacted to L.S.'s testimony describing her violent attack with sympathy for her and hatred or contempt for the alleged perpetrator, here, defendant. This reaction would have seriously prejudiced the jury against defendant." *Id.*

¶ 44　　　This court found that, "[d]ue to the inherently high, and often overly persuasive, probative value of such propensity evidence, the need to avoid unfair prejudice by providing a full context for the other-crimes testimony is readily apparent." *Id.* ¶ 46. We held that, "[g]iven the real possibility the jury would convict defendant based on his alleged prior bad acts alone, barring the acquittal evidence further enhanced the already high danger of undue prejudice against him." *Id.* We concluded that,

"[b]ecause the proper application of the balancing test firmly establishes the serious risk of undue prejudice to defendant created by the admission of the other-crimes evidence in the absence of any acquittal evidence, '[t]he risk of misleading or overpersuading the jury is palpable.' 'Fairness requires disclosure,' " and barring the evidence was an abuse of discretion. *Id.* ¶ 48 (quoting *People v. Bedoya*, 325 Ill. App. 3d 926. 943 (2001)).

¶ 45    The State attempts to distinguish *Ward* on the basis that, unlike section 115-7.3, this case fell under section 115-7.4 of the Code, which does not specifically authorize a defendant to present rebuttal evidence. Compare 725 ILCS 5/115-7.3(b) (West 2020), with *id.* § 115-7.4. The State further contends that, unlike the earlier acquittal in *Ward*, defendant's acquittal in the Iroquois County case was not relevant to whether he committed these offenses and defendant was permitted to introduce detailed evidence placing Szalaj's testimony about the prior incident into context. In sum, the State argues that, because the evidence of defendant's acquittal was neither probative of whether he attacked Szalaj on July 3, 2020, nor necessary to cure any undue prejudice to defendant resulting from the State's evidence of his prior conduct on July 3, the trial court's decision to bar the acquittal evidence was proper. We disagree.

¶ 46    In this case, the State was allowed to elicit evidence under section 115-7.4 detailing multiple other alleged instances of domestic violence involving defendant and Szalaj. If the trial court allows the admission of other-crimes evidence under section 115-7.4 and the defendant seeks to introduce acquittal evidence from the prior case, the trial court should conduct a balancing test weighing the probative value of the acquittal evidence against undue prejudice to the defendant if the evidence is precluded. Here, the trial court did not conduct any balancing test. Instead, at trial, the court denied defendant's request on the basis that a jury finding him not guilty did not amount to a finding that he was innocent of the charges. Later, in denying his posttrial motion raising the issue again and citing *Ward*, the court reasoned that, while both cases involved defendant and Szalaj, "the rules of evidence [in Iroquois County] are very different for whatever reason because of that state's attorney, and did not involve [the same statutory] matter." The court apparently viewed the acquittal in Iroquois County as less reliable evidence because it was not rendered in Kankakee County.

¶ 47 We recognize that *Ward* concerned highly emotional testimony involving a sexual assault of another alleged victim and that the propensity evidence in that case was admitted under section 115-7.3 of the Code, rather than section 115-7.4. There is nothing in *Ward*, however, that somehow limited our rationale concerning the admission of acquittal evidence to other-crimes sexual assault cases admitted under section 115-7.3. As in *Ward*, if the acquittal evidence had been admitted, the jury could have been informed that a verdict of "not guilty" may have been attributed to a number of factors and does not conclusively establish defendant's actual innocence. See *Ward*, 2011 IL 108690, ¶ 47. "As our courts have long recognized, jurors tend to find propensity evidence overly persuasive and to give it too much weight, prompting them to prejudge defendants based on their generally bad records." *Id.* (citing *Michelson v. United States*, 335 U.S. 469, 476 (1948), and *Lindgren*, 79 Ill. 2d at 137).

¶ 48 We find that the evidence of defendant's acquittal had probative value because it would have provided the jury with a more complete context for Szalaj's detailed testimony, which included references to the Iroquois County case, a case that had gone to trial as defense counsel had informed the jury in opening statements. While the jury "still had an independent duty to determine the credibility of her testimony and evaluate its weight, the acquittal evidence would have provided another part of the picture" that was otherwise absent. See *id.* ¶ 40.

¶ 49 Similarly, we find unfair prejudice to defendant because the other-crimes evidence was admitted without the allowance of the acquittal evidence. The jury was instructed that the defendant had "been involved in conduct other than that charged in the indictment" and that it was the jury's responsibility "to determine whether the defendant was involved in the conduct and, if so, what weight should be given to this evidence on the issues of propensity." The jury presumably knew from Szalaj's testimony that charges had been brought against defendant in Iroquois County and that a trial had occurred on those charges. Barring the acquittal evidence, as in *Ward*, ran the risk of further enhancing the danger of undue prejudice due to the inherently persuasive, probative value of the propensity evidence. And, as in *Ward*, juror confusion may have similarly been minimized by providing the jury with a more complete context for considering her testimony.

¶ 50    We reiterate that, "[b]ecause the proper application of the balancing test firmly establishes the serious risk of undue prejudice to defendant created by the admission of the other-crimes evidence in the absence of any acquittal evidence, 'the risk of misleading or overpersuading the jury is palpable.' 'Fairness requires disclosure.' " *Id.* ¶ 48 (quoting *Bedoya*, 325 Ill. App. 3d at 943). For these reasons, we find the trial court abused its discretion in barring the acquittal evidence.

¶ 51    An evidentiary error by the trial court is subject to harmless error analysis. *Smart*, 2025 IL 130127, ¶ 90. This court has established that an evidentiary error is harmless if the other evidence in the record overwhelmingly supports the conviction. *People v. Heineman*, 2023 IL 127854, ¶ 95; see *People v. Nevitt*, 135 Ill. 2d 423, 447 (1990) (holding that evidentiary error is harmless "where there is no reasonable probability that the jury would have acquitted the defendant absent the" error).

¶ 52    As the State asserts, although defendant was barred from introducing evidence of the acquittal, he was able to present his own testimony concerning the events of July 3, 2020, as well as three videos taken by his motion-activated doorbell camera, which detailed portions of the incident. Additionally, the testimony concerning the July 3 incident was one of four incidents of domestic violence about which Szalaj and defendant testified. The jury was well aware of the volatile and violent nature of the relationship, and the evidence surrounding the July 3 incident played a cumulative and minimal role in the overall evidence presented and considered by the jury.

¶ 53    Additionally, while defendant advanced a theory of self-defense, his version, even if believed by the jury, could not plausibly support the affirmative defense. To raise a claim of self-defense, a defendant must present evidence supporting each of the following elements that justify the use of force in defense of a person:

> "(1) that force had been threatened against [the] defendant; (2) that [the] defendant was not the aggressor; (3) that the danger of harm was imminent; (4) that the force threatened was unlawful; (5) that [the] defendant actually believed that a danger existed, that the use of force was necessary to avert the danger, and that the kind and amount of force actually used was necessary; and (6) that [the] defendant's beliefs were reasonable." *People v. Morgan*, 187 Ill. 2d 500, 533 (1999).

Based upon defendant's own testimony, any danger that Szalaj posed after she threw a beer in his face ceased once she fled to the bathroom in her own home and closed or locked herself inside. Defendant admitted that he chased after her, used his body to hit the bathroom door with some force, and caused the doorjamb "to pop." Consequently, defendant, by his own testimony, became the aggressor after Szalaj's retreat, making his claim of self-defense implausible.

¶ 54    Consequently, we find the trial court's error in barring the acquittal evidence harmless because there is no reasonable probability that the jury would have acquitted defendant had the evidence been admitted.

¶ 55                                    CONCLUSION

¶ 56    For the foregoing reasons, the judgment of the appellate court is reversed and the cause remanded to the appellate court to consider defendant's remaining claims.

¶ 57    Appellate court judgment reversed and remanded.

¶ 58    JUSTICE O'BRIEN, specially concurring:

¶ 59    I agree with the majority's conclusion that the trial court erred in barring defendant's acquittal evidence. See *supra* ¶ 50. In conducting a proper balancing test, the risk of undue prejudice to defendant created by the admission of the other-crimes evidence in the absence of any acquittal evidence is clear due to the inherently high and overly persuasive probative value of the other-crimes testimony. See *supra* ¶ 50. I write separately to disagree with the majority's finding with respect to Illinois Rule of Evidence 405(b)(2) (eff. Jan. 1, 2011). See *supra* ¶ 34. Because a temporal limitation for evidence of the victim's violent character is plainly inconsistent with the purpose behind admitting propensity evidence, I find that the only logical reading of the word "prior" in Rule 405(b)(2) is "prior to trial" and not "prior to the charged offense." See *People v. Degrave*, 2023 IL App (1st) 192479, ¶ 81.

¶ 60    The majority holds that the plain language of Rule 405(b)(2) bars evidence of the victim's propensity for violence that occurs after the charged offense. *Supra*

¶ 33. The majority reasons that defining the word "prior" in Rule 405(b)(2) as "prior to trial," instead of "prior to the charged offense," renders it superfluous given all evidence must necessarily be presented before trial. *Supra* ¶¶ 33-34. I disagree with this limited reasoning, as such a conclusion not only conflicts with both this court's previous reasoning for allowing a defendant to seek admission of evidence of a victim's propensity for violence (see *People v. Lynch*, 104 Ill. 2d 194, 199-201 (1984)) and the plain and unambiguous language of Rule 405(b)(2), but it also conflicts with the logical reality that a defendant's right to present evidence of a victim's violent conduct is grounded in his constitutional right to present a defense. And clearly, evidence of the victim's propensity for violence is crucial to a defendant's claim of self-defense.

¶ 61    In *Lynch*, 104 Ill. 2d at 199-200, we held that evidence of the victim's aggressive and violent character may be offered to support the defendant's theory of self-defense to show that (1) "the defendant's knowledge of the victim's violent tendencies necessarily affects his perceptions of and reactions to the victim's behavior" and (2) "evidence of the victim's propensity for violence tends to support the defendant's version of the facts where there are conflicting accounts of what happened." In determining that the trial court improperly excluded evidence of the victim's three convictions for battery, we reasoned that in order "[t]o decide what really occurred the jury needed all the available facts, including evidence of [the victim's] prior convictions for battery." *Id.* at 200. We also stated that "[t]he defendant was entitled to have the jury judge the reasonableness of his behavior in light of all the relevant facts." *Id.* at 201.

¶ 62    The second *Lynch* basis is codified in Rule 405(b)(2) (Ill. R. Evid. 405(b)(2) (eff. Jan. 1, 2011)). Rule 405(b)(2) identifies when a victim's prior violent conduct may be admitted in a criminal homicide or battery case. *Id.* Specifically, Rule 405(b)(2) contains three questions: (1) Is the case before us one of criminal homicide or battery? (2) Has the defendant raised a theory of self-defense? and (3) Is there conflicting evidence as to whether the victim was the aggressor? *Id.* If the answer to all three questions is in the affirmative, then the defendant may seek admission of the victim's "prior violent conduct" under Rule 405(b)(2). *Id.* Significantly, the word "prior" is the only qualifying word regarding what type of violent conduct may be admitted. See *id.* The majority, however, proceeds to narrow the type of "violent conduct" that may be admitted by limiting its admission

to violent conduct that occurred prior "to the charged offense," as opposed to simply evidence of "prior violent conduct" as Rule 405(b)(2) prescribes. *Supra* ¶ 33. Stated differently, the majority finds Rule 405(b)(2) to be unambiguous, yet it arbitrarily proceeds to impose a temporal limitation upon when "prior violent conduct" may be admitted. See *supra* ¶ 33. Such an action plainly violates the cardinal rule of statutory construction that, when the statutory text is clear and unambiguous, a court may not depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *People v. Grant*, 2022 IL 126824, ¶ 25. The majority's added temporal limitation also abrogates the trial court's discretion in determining the relevance and admissibility of evidence. See *People v. Hanson*, 238 Ill. 2d 74, 101 (2010); *People v. Morgan*, 197 Ill. 2d 404, 455 (2001) (holding it is within the trial court's discretion to determine whether evidence is relevant and admissible). Accordingly, interpreting "prior" as "prior to trial" would allow the trial court to determine if the three prerequisites are met without placing a wholesale, arbitrary bar on the victim's postoffense conduct as the majority does.

¶ 63 In an effort to ignore the above reality, the majority cites *People v. Evans*, 2018 IL App (4th) 160686, a 2018 Fourth District case, in support of its decision to limit evidence of an alleged victim's prior acts of violence to those acts that predate the charged incident. *Supra* ¶ 32. I believe *Evans* was incorrectly decided and instead find that *Degrave*, 2023 IL App (1st) 192479, a First District case decided in 2023, further illustrates why Rule 405(b)(2) cannot reasonably be read to apply only to the victim's violent conduct prior to the charged offense.

¶ 64 The *Degrave* court noted that *Lynch* was decided long before the adoption of the Illinois Rules of Evidence (*id.* ¶ 55) and was devoid of "any hint that there is a timing element regarding the character evidence" (*id.* ¶ 81). The *Degrave* court proceeded to then review the history and logical underpinnings of Rules 404(b) (Ill. R. Evid. 404(b) (eff. Jan. 1, 2011)) and 405(b)(2) in conjunction with our holding in *Lynch*. *Degrave*, 2023 IL App (1st) 192479, ¶¶ 84-87. Under Rule 404(a), character evidence is generally prohibited to prove a person acted in conformity therewith on a particular occasion, except under limited circumstances. Ill. R. Evid. 404(a) (eff. Jan. 1, 2011). Rule 405(b)(2) is an exception to the general rule that allows a defendant to present evidence of specific instances of the "alleged victim's prior violent conduct" in homicide and battery cases where he "raises the theory of

self-defense and there is conflicting evidence as to whether the alleged victim was the aggressor." Ill. R. Evid. 405(b)(2) (eff. Jan. 1, 2011). Another such exception is found in Rule 404(b), which prohibits evidence of other crimes, wrongs, or acts for propensity purposes except as provided by sections 115-7.3, 115-7.4, and 115-20 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3, 115-7.4, 115-20 (West 2020)), which allow other-act evidence to show a defendant's propensity. Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). The *Degrave* court highlighted how the language used in Rule 404(b), which refers to " '*other* crimes, wrongs, or acts' " (emphasis in original) (*Degrave*, 2023 IL App (1st) 192479, ¶ 73), and the statutes incorporated into Rule 404(b)[1] do not have a temporal limitation (*id.* ¶¶ 73-76), allowing evidence of a defendant's other criminal acts to show defendant's propensity *regardless* of whether those other acts predate or postdate the incident in question (*id.* ¶ 77). The *Degrave* court then concluded that it would be logically inconsistent to now allow the State to introduce evidence of a defendant's postoffense conduct via Rule 404(b) but not similarly allow the defendant, *whose constitutional rights are at stake*, to introduce evidence of a victim's postoffense conduct via Rule 405(b)(2). *Id.* ¶ 86. The *Degrave* court also correctly noted how there was no timing element in *Lynch* regarding character evidence, which comports with the purpose behind propensity—to provide evidence of a character trait for violence. *Id.* ¶ 81.

¶ 65    While the majority believes that its interpretation of "prior" as "prior to the charged offense" is not inconsistent with *Lynch* (*supra* ¶ 33), which only involved the victim's violent conduct that predated the charged offense, *Lynch* also held that a defendant could introduce evidence of the victim's violent conduct, "regardless of when and how [the defendant] learned of" the victim's aggressive and violent character. *Lynch*, 104 Ill. 2d at 200. Thus, even when presented with the opportunity

---

[1]Section 115-7.4 of the Code of Criminal Procedure of 1963, which utilizes similar language to Rule 405(b)(2), admits "evidence of the defendant's commission of *another* offense or offenses of domestic violence." (Emphasis added.) 725 ILCS 5/115-7.4(a) (West 2020). Section 115-7.3(b) admits "another offense or offenses" of the defendant's *sexual abuse*. *Id.* § 115-7.3(b). Section 115-20 admits "evidence of a prior conviction of a defendant for domestic battery" or related offenses but further clarifies that "prior conviction" may be used in a "later criminal prosecution" with no language suggesting that the "prior conviction" must have occurred prior to the events that form the current charged offense. *Id.* § 115-20.

to impose a temporal limitation based on when the defendant learned of the victim's violent behavior, we chose not to, specifically noting the danger of prejudice to the defendant if such evidence is barred.[2] See *id.*

¶ 66 Additionally, *Degrave* specifically addressed the deficiencies of the analysis in *Evans*. *Degrave*, 2023 IL App (1st) 192479, ¶¶ 66-67. *Evans* merely reiterated that *Lynch* did not involve a victim's postoffense conduct, unlike the instant case before this court. *Evans*, 2018 IL App (4th) 160686, ¶¶ 29-31. The *Evans* court then summarily found that the defendant failed to provide further authority to support his expansion of *Lynch*, despite the State conceding that the postoffense evidence of the victim's violent character should have been found admissible per *Lynch*. *Id.* ¶¶ 30-31. While acknowledging the State's concession,[3] the *Evans* court curiously refused to accept it, merely stating that, "[l]ike defendant, the State failed to address the fact that the alleged incident on the phone video—which we note is not part of the record for this court to review—occurred after the charged incident in this case." *Id.* ¶ 31.

¶ 67 Simply put, *Degrave*'s holding best aligns with this court's previous precedent and policy regarding the purpose behind the admission of propensity evidence. *Degrave* held that "[o]ne's character is revealed by one's actions, but there is no particular reason why that person's character would be revealed more or less, depending on whether the acts revealing this character took place before or after

---

[2]" 'Convictions for crimes of violence, such as [the alleged victim's] three convictions for battery, are reasonably reliable evidence of a violent character. Such evidence is ordinarily inadmissible *against a defendant* for the purpose of proving the offense charged, because the danger of prejudice outweighs the relevance of the evidence *where the defendant stands to lose his liberty or even his life if convicted.* Where the *victim's* propensity for violence is in question, however, the danger of prejudice to the defendant lies in *refusing* to admit such evidence, while its high degree of relevance and reliability remains constant.' (Emphases added.)" *Degrave*, 2023 IL App (1st) 192479, ¶ 85 (quoting *Lynch*, 104 Ill. 2d at 201-02).

[3]"We note the State appears to concede that the trial court erred in not allowing defendant's use of the phone video. According to the State:

'The State concedes that the trial court should have found admissible *Lynch* evidence *if* a video showed the victim pouring liquid on defendant and "setting fire to his beard with a cigarette." [Citation.] Such evidence would have been relevant to show "who was the aggressor." *Lynch*, 104 Ill. 2d at 200, 470 N.E.2d at 1020.' (Emphasis added.)" *Evans*, 2018 IL App (4th) 160686, ¶ 31.

the charged incident." 2023 IL App (1st) 192479, ¶ 81. The majority, however, adopts the State's argument, claiming that "a [temporal] limitation potentially acknowledges that a victim's conduct after a violent attack may be a result of the trauma of the attack itself and not a preexisting predisposition to violence." *Supra* ¶ 34. However, the standard is not "a preexisting predisposition to violence"; it is simply a character for violence, with no reference to how that character trait was formed or developed. See Ill. R. Evid. 405(b)(2) (eff. Jan. 1, 2011). The reasoning the majority provides fails to account for the agency victims possess in controlling their own violent behavior and unnecessarily places full responsibility, and subsequent punishment, on the defendant for any transgressions his victim may commit following the charged offense. While there may be cases in which a victim is merely retaliating against the defendant for the defendant's past history of abuse, such is not always the case, as evidenced by the majority's use of the word "may" in asserting that a victim's attack may, *or may not be*, the result of trauma from the defendant's violent behavior. *Supra* ¶ 34. Moreover, by reading "prior" to mean "prior to trial," I do not mandate that all evidence postoffense must be admitted; if the trial court finds such evidence to be irrelevant or otherwise inadmissible, the trial court is well within its authority to exercise its own discretion regarding evidentiary admissions. See *Morgan*, 197 Ill. 2d at 455. Rather, I believe that such evidence should not be arbitrarily barred on the sole basis that it occurred after the offense and that the judiciary should not preemptively forbid such evidence out of an overabundance of concern for how and when a victim's violent character developed.

¶ 68    However, the inquiry does not end here, as retrial is only warranted if the evidentiary error by the trial court is not harmless. For the harmless error analysis for this issue, as well as the acquittal issue, I would agree with the majority. Defendant conceded to chasing Szalaj upstairs into the bathroom and hitting the closed bathroom door with some force. His own testimony undermines his claim of self-defense when he pinned Szalaj to the tub with his boot to restrain her. Additionally, given the breadth of the violent attacks that defendant and Szalaj presented, it was well documented that the two were engaged in a tumultuous and violent relationship. Thus, even with the admittance of Szalaj's postoffense conduct, there is no reasonable probability that the jury would have acquitted defendant had the evidence been admitted.

¶ 69 Accordingly, I agree with the majority's ultimate decision to reverse the judgment of the appellate court and remand the cause to the appellate court to consider defendant's remaining claims.

¶ 70 CHIEF JUSTICE NEVILLE and JUSTICE CUNNINGHAM join in this special concurrence.